# Wise v. Falkner.

### *Action for Rent, by Assignee of Reversion.*

1. *Sale of rented premises during term; assignee's right to rent.* — Rent being an incident to the reversion, the purchaser of rented premises from the landlord, during the term, is entitled to the rent subsequently accruing, and attornment by the tenant is not necessary to perfect his right to recover it. Rev. Code, § 1568.

2. *Same; how assignee must declare.* — If the tenant has attorned to the assignee or purchaser of the reversion, the latter may declare for the rent as on a demise by himself; but, if there has been no attornment, he must declare as assignee, and show in his complaint how his right accrued; otherwise, the variance between his pleadings and proof would be fatal.

3. *What constitutes payment.* — If the tenant is summoned by process of garnishment as the debtor of his original landlord, and pays the amount due for rent to the clerk of the court, in answer to the garnishment, in Confederate treasury-notes, in the presence of the assignee of the reversion, who consents that it may be so paid, and agrees that he will contest with the attaching creditor the right to it, the debt is extinguished as against the assignee, and he is estopped from afterwards denying the validity of the payment.

4. *Charge assuming facts not proved.* — A charge to the jury must be confined to the evidence : a charge which assumes as proved a fact of which there is no evidence whatever, is erroneous.

5. *Testimony of parties as witnesses.* — When the plaintiff and defendant are examined as witnesses in a civil cause (Rev. Code, § 2704), and contradict each other on a material point, the testimony of one is not set off against that of the other ; but the testimony of both must be considered by the jury, and subjected to the same tests as that of other witnesses.

APPEAL from the Circuit Court of Coffee.

Tried before the Hon. J. McCALEB WILEY.

This action was brought by Herrin Wise against Elijah Falkner, and was commenced on the 6th May, 1867. The complaint contained three counts : the first claiming $325, " due from said defendant by account on the 1st day of January, 1862, on an account stated between plaintiff and defendant on the 10th January, 1861, for the rent of plaintiff's saw and grist mill for and during the year 1861, at the defendant's instance and request ; " the second, the same sum " due by account on the 1st January, 1862, for the rent of plaintiff's saw and grist mill, from the 10th day of January, 1861, until the 1st day of January, 1862, rented by plaintiff to defendant at said defendant's instance and request ; " and the third, the same sum, " for the rent of a certain tract of land," particularly described, " demised by plaintiff to defendant on the 10th day of January, 1861, said rent commencing on the 10th day of January, 1861, and ending on the 31st December,

1861." The defendant pleaded, "in short by consent, 1st, the general issue; 2d, payment; 3d, *non assumpsit;*" and issue was joined on these pleas.

"On the trial," as the bill of exceptions states, "the plaintiff testified, as a witness for himself, that he rented the lands and mill, for which this action of rent is instituted, to the defendant, in the early part of the year 1861; that the price agreed to be paid for the rent was $325; that the defendant had rented said lands, shortly before that time, from Carey Curry and wife, and was in possession under said contract of rent from them for the year 1861; that he (plaintiff) purchased said lands from said Curry and wife, on or about the 9th January, 1861, and took their deed for the same; that he saw the defendant, on or about the 10th January, 1861, and told him that he had purchased said land, and that he wanted the possession of it or the rent; and that defendant then agreed to pay him the rent for the year, if plaintiff would let him remain in possession, which plaintiff agreed to do. Plaintiff also read in evidence to the jury, against the defendant's objection, the deed from said Curry and wife, as follows," setting it out. "Defendant then testified, as a witness for himself, that he rented the land from said Curry and wife, about the 1st January, 1861, for that year, for $300, and went into possession; that plaintiff came to him, about the 10th January, 1861, and notified him that he had purchased the land from Curry and wife, and that he wanted the rent paid to him; that he then stated to plaintiff, in reply, that he had been garnisheed, and would be liable to the plaintiff in the attachment, and that he never agreed to pay the rent to said plaintiff. He stated, also, that he had been garnisheed to answer what he owed said Curry for the rent in several cases; that some of the garnishments were in justices' courts, and one was in the circuit court of Coffee, in favor of one Washington Atkinson; that during the late war, and not long after he had filed his answer to said garnishment, under the advice of his attorney, he paid the whole of said debt to the clerk of the said circuit court, in Confederate treasury-notes; that the plaintiff was present when said money was so paid, and agreed that it should be thus paid, and that he would look to the money in the clerk's hands for his pay, and would not further look to the defendant; also, that the plaintiff owed him $150 at that time, and paid it to him on that day, to enable him to make said payment to the clerk. Plaintiff was then examined again for himself, and testified, that he had nothing to do with the payment of said money to the clerk, and never consented thereto, or made any such agreement as was stated by defendant; that all he had to do with it was to pay defendant

[Wise v. Falkner.]

the debt he owed him, which he did at his request. Defendant then again took the stand, and expressly contradicted the statements made by plaintiff; and the plaintiff, being again introduced, by leave of the court, testified that he never did consent to the payment of the money to the clerk.

"This was all the evidence in the cause," except the record of the garnishment suit; and the court thereupon charged the jury, at the instance of the defendant, as follows: "1. If the jury believe, from the evidence, that the action was brought upon a contract which purports to have been made between plaintiff and defendant, for the rent of said premises, the plaintiff cannot recover upon the agreement made between the defendant and Curry. 2. The jury cannot find for the plaintiff in this action, upon an agreement made between the defendant and Curry for the rent of said premises. 3. If the jury believe, from the evidence, that the defendant owed the plaintiff for the rent of said premises, or had obligated himself to pay said rent, then they may consider whether or not defendant has ever paid said rent; and if they find that he paid the amount of said rent to the clerk of the circuit court, to be contended for by plaintiff and the creditors of said Curry, and [that the amount so paid] was in Confederate treasury-notes, and was so paid by an understanding with plaintiff, or with his consent, then the plaintiff cannot recover. 4. If the jury believe, from the evidence, that the plaintiff paid to the circuit clerk one hundred and fifty dollars, in consideration of defendant's turning over to him a note which he held on him, and that said money was paid over to the clerk with the understanding between the parties to this suit that it, together with other money paid by defendant, should be placed in the hands of said clerk, to be contended for by plaintiff and others, then the plea of payment is sustained, and the plaintiff cannot recover in this action. 5. If the jury believe that the defendant paid to the clerk the money due for the rent of said premises, upon an understanding, and with the consent of plaintiff, then the plea of payment is sustained, and the plaintiff is not entitled to recover; and they have a right to look to all the circumstances, as shown by the proof, to see whether or not he did so consent. 6. In determining whether or not plaintiff consented for the rent money to be paid to the clerk, the jury may look to the fact, if it be a fact, that defendant talked to plaintiff about it, and procured part of it from him, and paid it in his presence; and also to the further fact, that plaintiff said he could burst up the garnishment suits, and such other circumstances as may have been proved. 7. If the plaintiff swore there was a contract between him and defendant for the rent of the mill and lands in question, and the de-

fendant swore there was no such contract between them, and there was no other evidence, upon this state of proof, the jury must find for the defendant." The plaintiff excepted to each of these charges, and he now assigns them as error.

W. D. ROBERTS, with SEALS & WOOD, for appellant.

J. D. GARDNER, *contra.*

BRICKELL, J. —The several counts of the complaint are framed to recover rent for the use and occupation of lands demised by the plaintiff to the defendant. On the trial, there was evidence tending to show that the defendant entered into the occupancy of the lands, under a contract of renting for a year, made with one Curry. During the term, Curry sold and conveyed the premises to the plaintiff, the rent not being due and payable until the expiration of the term. There was also evidence tending to show that, after the sale and conveyance to the plaintiff, the defendant, having notice thereof, attorned to the plaintiff, and expressly promised to pay him the rent. In either aspect of the case, the plaintiff was entitled to the rent falling due after the conveyance to him by Curry. Under the statute (R. C. § 1568), rent is an incident to the reversion, and the lessor's grant of the reversion carries with it the rent falling due thereafter, without the attornment of the tenant to the grantee. *English* v. *Key*, 39 Ala. 113.

2. After an attornment, and an express promise to pay the rent to become due, the relation of landlord and tenant would be created by contract, and not by operation of law. Taylor's Land. & Ten. § 14. On this contract, the plaintiff would be entitled to recover the rent, and may declare thereon, as if he had been [the original lessor. When the plaintiff's right of recovery rests on the transfer of the reversion to him, he must, in declaring against the lessee for rent, aver that he is the assignee of the reversion, showing how he became such. 1 Chitty's Pl. 367. The rule prevails, which applies whenever the plaintiff claims as assignee, and not by virtue of a contract made with him, that the assignment, which lies at the foundation of his right of action, must be averred. If he declares generally, as upon a contract made with himself, and the evidence offered is of a contract made with another, to which he derives a right by assignment, there would be a fatal variance between the pleading and proof. The complaint being general, adapted only to a recovery of rent on a demise made by the plaintiff, the court did not err, in charging the jury that the plaintiff could not recover the rent reserved on the demise of the lands made by Curry ; and this we understand to be the

VOL. LI.

[Wise v. Falkner.]

meaning of the first and second charges, to which exceptions were taken. The plaintiff had a clear right to recover this rent; but his right accrued by assignment, and by proper averments he should have shown how it was derived.

3. When this case was before this court at the January term, 1871 (*Wise* v. *Falkner*, 45 Ala. 471), one of the errors assigned was a charge given by the circuit court, that if the defendant, in the presence of the plaintiff, and without objection from him, had paid the rent now claimed, in Confederate treasury-notes, to the clerk of the circuit court, in answer to process of garnishment against him as the debtor of Curry, his original landlord, and the vendor of the plaintiff, the plaintiff could not recover. This charge was declared erroneous. The charges which are now assailed as erroneous, on the authority of that decision, present a different state of facts. The payment of Confederate treasury-notes, to the clerk of the circuit court, is now claimed to be valid, because induced by the plaintiff's express consent to such payment, and on his agreement to contest with the attaching creditor the right to the notes so paid to the clerk of the court. A debt may be extinguished by the creditor's voluntary acceptance of Confederate treasury-notes in payment. *Ponder* v. *Scott*, 44 Ala. 241. If the plaintiff had directly accepted such notes, in satisfaction of the debt now claimed from the defendant, the debt would have been extinguished, and no right of action would have remained in the plaintiff. The payment to another, with the consent of the plaintiff, and on his promise to look to the funds so paid for the satisfaction of his debt, has the same effect. Such consent and agreement estop the plaintiff from subsequently claiming the debt of the defendant. The court did not, therefore, err in giving the third, fourth, and fifth charges, in effect asserting the law as we have declared it.

4. In giving the sixth charge, the court erred. It assumed as a fact proved in the cause, that plaintiff said " he could burst up the garnishment suits." We do not find in the record any evidence that plaintiff had made any such declaration. A charge must be confined to the testimony. In it no fact must be assumed or asserted as proved of which there is not evidence. *Hollingsworth* v. *Martin*, 23 Ala. 591.

5. The seventh charge is also erroneous. The plaintiff and defendant were both competent witnesses. Each, in legal contemplation, is equally credible. When two witnesses, of equal credibility, directly contradict each other, it is the province of the jury to weigh the evidence, and determine for themselves which they will believe. The law attaches no more weight to the evidence of the defendant, than to that of the plaintiff. The testimony of the one is not set off against the testimony

[Kelly *v*. Moore.]

of the other. The jury must, from the manner in which they testify, and from the tests to which they would subject the tesimony of witnesses not parties or interested, determine to whom they will give credit.

For the errors we have noticed, the judgment is reversed, and the cause remanded.