# Frank K. Ward, Plff. in Err., *v.* City of Philadelphia.

As a general rule a lessee is not permitted to impeach, or in any way to call in question, the title of his landlord, except in cases of fraud, misrepresentation, or mistake.

If an owner of land is in possession, and, with full knowledge of his own title, takes a lease from a stranger, he will not, in the absence of fraud, misrepresentation, and mistake, be permittetd, during the existence of the term, to assert his own title against his lessor, or as a defense to the payment of rent.

The same rule applies to a tenant holding over.

(Decided October 4, 1886.)

Error to Common Pleas, No. 4, of Philadelphia County to review a judgment on a verdict for the defendant in an action of replevin. Affirmed.

This was an action of replevin by Frank K. Ward against the city of Philadelphia, for goods belonging to him distrained by the defendant for rent alleged to be due.

Upon avowry by the defendant the plaintiff pleaded *non demisit* and *non tenure.*

At the trial it appeared that in 1870 the city was authorized by act of assembly to take actual possession of any land or property at or near South street which it might deem necessary for the site of a bridge. Under this act the city built the arched eastern approach to the South street bridge, diagonally through a lot of ground belonging to one Rubicam. The lot was almost a rectangle, fronting on the Schuylkill river, and the approach divided it into two triangular pieces, one of which had all the river front.

The jury to assess damages awarded Rubicam $14,500, stating that the property was very seriously injured, and that the whole wharf front and a part of the dock adjoining on the north had been "taken."

In 1874 Rubicam sold to Ward the lot with the following reservation: "Subject to the rights of the city of Philadelphia to the use of that portion of the hereby granted premises taken and necessary for the construction of the bridge crossing the River Schuylkill at South street."

Ward took possession of the whole lot, including the triangular space on the river and the spaces under the arches of the approach, and was in possession up to the trial. He used the property as a coal and wood yard, unloading his supplies from towboats under the bridge or on the triangular piece. His possession was undisputed until some time in the year 1880, when, having previously rented out the triangular space, he was summoned by the commissioner of city property who demanded the rents received from it, on the ground that it belonged to the city. He refused; and his possession was not again threatened until early in the year 1881, when, having been informed by bills posted on the premises that the city was about to sell immediately to the highest bidder a lease of the triangular space and the ground under the arches, he took a lease of the property in dispute, from the city, for the term of three years, commencing March 1, 1881, at the annual rental of $310. If it had been rented and occupied by another person his business would have been destroyed. Before signing another lease for this property, he happened to examine his title papers and discovered that the city had not taken the triangular lot, and that the title thereto was in himself, and not in the city, and that he had a right to use the ground spanned by the arches of the bridge in such a way as not to interfere with the city's use of the ground for the purpose of perpetually maintaining the bridge, and could not be compelled to pay rent therefor; he therefore refused to pay rent to the city for his own property; whereupon, the city distrained for the same, and this action arose.

Of the rent distrained for, but $77.50 accrued under the old lease. The balance was due on a verbal contract of letting

which was never reduced to writing, but was made before the plaintiff had discovered that the city had no title to the premises.

After the defendant had proved the lease, the plaintiff, having put in evidence the facts under which he was compelled to sign the lease, offered the deed from Rubicam to himself, in order to show superior title. The offer was rejected, on the ground that no fraud had been shown on the part of the city.

The verdict, by the direction of the court, was for the defendant; whereupon, the plaintiff took this writ and assigned as error the rejection of his deed.

*Ellis Ames Ballard* and *Rufus E. Shapley,* for plaintiff in error.—The doctrine of estoppel, as applied between lessee and lessor, does not hold where the lease has been taken under fraud, force, or illegal behavior on the part of the lessor. Hamilton v. Marsden, 6 Binn. 45.

Where one in possession of property is induced to take a lease, the circumstances being such that he could not, at the time, refuse to sign it, he may, nevertheless, impeach his landlord's title. And it is for the jury to say whether, under the circumstances, his acceptance of the lease was a waiver or abandonment of his title. Brown v. Dysinger, 1 Rawle, 408, 415.

In Robins v. Kitchen, 8 Watts, 390, it is said that, upon the issues of *non demisit* and no rent in arrear, it is competent for the plaintiff to show that he was induced to execute the lease and become the tenant of the defendant, by fraud and misrepresentation, and that at the time it was executed he was really the owner of the land himself.

In the present case the plaintiff's position is greatly strengthened by the fact that he had enjoyed the exclusive and uninterrupted possession of the property in dispute for six years, and that, indeed, the city had never before either been in possession or asserted its right so to be.

Where one in peaceable possession of property is approached by another who has no right, and who induces him to become his tenant, it must be by some misrepresentation of fact or law or both, or by some unfair combination between him and the tenant. Hockenbury v. Snyder, 2 Watts & S. 240; Baskin v. See-

christ, 6 Pa. 154, 163; Miller v. M'Brier, 14 Serg. & R. 382; Hall v. Benner, 1 Penr. & W. 402, 21 Am. Dec. 394.

The wording of the act under which, in this case, the city took the property in dispute is: "The city commissioners may take actual possession of any land or property at or near South street which they may deem necessary for the site of the bridge." Act April 28, 1870 (P. L. 1289).

To vest the fee in the public, it must clearly appear that it was the intention of the legislature, disclosed by the act itself, to take a fee. Washington Cemetery v. Prospect Park & C. I. R. Co. 68 N. Y. 591.

No more of the title is devested from the former owner than is necessary for the public use. Redf. Railways, 156.

If the language of the act admits of a construction which will leave a fee in the owner, subject to the public easement, it will be so construed. Mills, Em. Dom. § 49.

The fact that the word "taken" is used, either in the act of assembly or in the award of the jury, does not raise a presumption that a fee was intended. People *ex rel.* Heyneman v. Blake, 19 Cal. 579; Mills, Em. Dom. § 30.

The owner of property along which a road has been built at an elevation can use the spaces between the trestle or arches, provided such use does not interfere with the use of the road. Kansas C. R. Co. v. Allen, 22 Kan. 285, 31 Am. Rep. 190; Overman v. May, 35 Iowa, 89.

The wording of the act of assembly in the present case is not so strong as that before the court in two other instances, in which it was held that the state or its representative took but an easement. Western Pennsylvania R. Co. v. Johnston, 59 Pa. 290; Pittsburgh & L. E. R. Co. v. Bruce, 102 Pa. 23.

*Frank M. Riter, Robert Alexander,* and *Charles F. Warwick,* for defendant in error.—It is the general rule that neither the tenant, nor one claiming under him, will be permitted to controvert the title of the landlord by showing a better title to the demised premises, either in himself or in a third party. To this rule there are, however, some exceptions, and the tenant may dispute the landlord's title under the following circumstances:

When he can show that the landlord had only a life estate in the premises, which has terminated by his decease.

When he can show that the title of the landlord has expired.

When he can show that the landlord's reversion has been sold.

When he can show that the title to the premises has become vested in himself, by the advice of the landlord.

· When he can show that he was induced to accept a lease, by the illegal behavior, fraud, or misrepresentation of the landlord.

When he can show that the landlord is holding in violation of law.   Jackson & G. Land. & T. p. 336.

The exception to the rule forbidding a tenant to dispute his landlord's title extends only to cases of fraud, misrepresentation, and illegal behavior on the part of the landlord.   Hamilton v. Marsden, 6 Binn. 45; Miller v. M'Brier, 14 Serg. & R. 382; Hockenbury v. Snyder, 2 Watts & S. 240; Brown v. Dysinger, 1 Rawle, 408; Robins v. Kitchen, 8 Watts, 390; Thayer v. Society of United Brethren, 20 Pa. 60; Mays v. Dwight, 82 Pa. 462; Smith v. Crosland, 106 Pa. 413.

OPINION BY MR. JUSTICE TRUNKEY:

Ward's deed is dated June 1, 1874, and is on its face subject to the rights of the city to the use of that portion of the premises taken and necessary for the bridge.   He has been in possession of the premises since the execution of his deed.

In 1881 he became a party to the lease, in which he covenanted to pay rent and to deliver up the premises to the city at the end of the term.   Before he accepted the lease he knew all the facts, saw an advertisement for a public sale, attended the sale, and became the highest bidder for the lease.

Prior to the advertisement, the commissioner of city property had demanded rent from Ward, on the ground that the city owned the land; the commissioner claimed that the city was the owner.

The assertion at the argument that the city threatened Ward that, unless he should accept a lease, a powerful corporation would be put into possession, is a mistake.   Ward testifies that the commissioner told him the city had received an offer from

such corporation for the use of the premises.  But the offer was not accepted; on the contrary, the lease was sold at auction to Ward himself.

There is no evidence that the city officer made false statements respecting the title, or that he made threats or menaces, or that he threatened to convey or lease to another person, before Ward could consult and advise with others, or that Ward was imbecile.  The testimony discloses no sign of coercion.  In fact, Ward knew what the title was, and preferred taking a lease to resisting the adverse claim.  He does not say that it was told him or that he believed that a lessee under the city would have a better right to possession than the city, or could take it by force.  Nor is there anything to show a mistake, that is, "some unintentional act or omission or error, arising from ignorance, surprise, imposition, or misplaced confidence."

Where an ignorant, imbecile, and timid old man has been induced to take a lease of his own land, by misrepresentation and threats, the proof of such misrepresentation and threats need not be very strong.  Robins v. Kitchen, 8 Watts, 390.

If one who has no right induces the owner who is in possession to become his tenant, it will require little proof of fraud, or threats, or imbecility, or some undue influence, to dissolve the relation of landlord and tenant, and put the tenant into the situation in which he was before he was induced to sign the lease.  Hockenbury v. Snyder, 2 Watts & S. 240.

As a general rule it is incontrovertible that a lessee is not permitted to impeach, or in any way to call into question, the title of his landlord, except he has been guilty of fraud, misrepresentation, or unfair dealing in the transaction.  And the exception is more stringently applicable where the owner or tenant in possession takes the lease.  It matters not whether the deception practised is voluntary falsehood or is simple mistake, for the immunity it confers springs, not so much from the fraud of the lessor, as from the wrong which the deception would work upon the rights of the lessee.  Baskin v. Seechrist, 6 Pa. 154.

But deception is not to be inferred without any evidence; neither is mistake.  If the lessee was in possession at the time the lease was executed, and the lessor had no title or right of

possession, the lessee may resist proceedings to turn him out, because the landlord, if he fails, is in no worse condition than he was before the lease. In order, however, to give the tenant this right, it is necessary to prove that he accepted the lease in mistake, or was induced to accept it by some fraud or misrepresentation. A lease given in good faith by one party and accepted by another with his eyes open is valid and binding on both. The mere fact that the tenant has a better title than his landlord does not of itself raise the presumption that the lease was a fraud, or accepted by mistake. Thayer v. Society of United Brethren, 20 Pa. 60.

The case was for recovery of possession; its doctrine could not apply with less force in a proceeding to collect rent.

The same rule extends to a tenant holding over, as to a tenant within the stipulated term. Taylor, Land. & T. § 705.

Judgment affirmed.