# Rhodes *v.* Downing.

## *Assumpsit.*

(Decided April 13, 1915. Rehearing denied May 11, 1915. 68 South. 788.)

1. *Appeal and Error; Filing Transcript; Delay; Excuse.*—Where the record itself discloses a sufficient excuse for the failure to file the transcript within the time required by the rules of the court, it does not become necessary to file affidavits excusing such delay.

2. *Same; Dismissal.*—Where the failure to file the transcript on appeal did not cause delay in the submission of the cause, and the filing was made on or before Monday of the call at which the cause was submitted, and the record disclosed good reason as to why it was not filed in time to submit the cause at a previous call, a motion to dismiss will be denied.

3. *Vendor and Purchaser; Leased Property; Rent.*—A grantee of rented premises may recover rent subsequently accruing, unless it has been severed from the reversion by assignment, or reserved from the grant, and, under section 3365, Code 1907, notice by the grantee to the tenant before the tenant pays the rent, of the conveyance, perfects the right to the rent.

4. *Landlord and Tenant; Contract to Purchase; Validity.*—During the term the tenant may contract to purchase, and thus create the relation of vendor and purchaser.

[Rhodes v. Downing.]

5. *Same; Evidence; Presumption.*—Where the relation of landlord and tenant is once shown, it is presumed to continue so long as the tenant is in possession, until the contrary is shown, and the tenant relying upon a contract to purchase has the burden of showing it.

6. *Principal and Agent; Authority.*—An agent with authority to rent land has no implied authority to sell it.

7. *Same; Acts of Agent; Ratification.*—In the absence of knowledge of the act, a principal cannot be held to have ratified the unauthorized act of his agent.

8. *Same.*—Where the tenant entered into possession of a tract of land under an agreement to pay a thousand pounds of seed cotton per annum as rent, and the agent of the landlord, with power to rent, contracted with the tenant for the sale of the land, stipulating that the tenant should remain in possession and continue to pay the thousand pounds of seed cotton per year as interest on the purchase price, and the landlord received the payment with no knowledge of the transaction of the sale, the landlord was not bound by the contract to sell, and the relation of landlord and tenant continued.

9. *Landlord and Tenant; Possession; Title; Estoppel.*—Where one enters into possession of land as tenant, while in possession thereof such one is estopped from denying his landlord's title, although the landlord had none, and from claiming title either for himself, or for someone else as against the landlord, or any person deriving title from him.

10. *Evidence; Judicial Notice.*—The courts cannot take judicial knowledge of the record of a suit in the circuit court not a part of the record on appeal.

11. *Judgment; Res Judicata; Ejectment.*—Under section 3858, Code 1907, one judgment in ejectment is not like other judgments, conclusive of the rights of the parties.

12. *Same; Conclusiveness.*—A judgment for rent in favor of the grantee of the landlord will not be reversed because the tenant, in a subsequent suit against a grantee obtained a judgment in ejectment, such judgment not being pleadable in estoppel.

APPEAL from Lawrence Circuit Court.

Heard before Hon. D. W. SPEAKE.

Assumpsit by Molly Downing against G. W. Rhodes. Judgment for plaintiff, and defendant appeals. Affirmed.

TROUP & NIX, for appellant.

G. O. CHENAULT, for appellee.

THOMAS, J.—This cause was submitted on February 2, 1915, both on the merits and on a motion of the

appellee to dismiss the appeal because of an alleged failure of the appellant to file the transcript within the time required by the rules of the Supreme Court, and because of a failure of the latter to submit affidavits showing good cause or excuse for the delay.

(1, 2) The record itself discloses sufficient excuse, saving the necessity at this time for an affidavit. It appears that the judgment from which the appeal is taken was rendered on December 3, 1913, that the appeal was taken on December 20, 1913, and that a certificate thereof was duly filed in this court on January 3, 1914; that at the first call after the appeal in this court of the division in which the case originated (the Eighth division), which was had on February 3, 1914, the case was here continued on certificate; that at the next call of that division, had on May 19, 1914, the case was again continued on certificate; and that at the next call of that division (the last call), had on February 2, 1915, the case was, as said, submitted by appellant on the merits upon the transcript, which had been duly filed on January 30, 1915, in conjunction with this motion of appellee to dismiss the appeal. The transcript so filed discloses that the judgment was rendered, as before said, on December 3, 1913; that the bill of exceptions was presented to the trial judge for signature on February 28, 1914, within the 90 days allowed by law, and was signed and approved by him on May 23, 1914, within the 90 days allowed by law (Code, § 3019). Said May 23, 1914 (the date of the approval and signing of the bill of exceptions), was after the spring call, 1914, of the Eighth division in this court, that commenced on May 18, 1914 (Code, § 5050), had passed; hence it appears that it was impossible to get the transcript here with the bill of exceptions in it, and as a part of the

record, in time for the submission of the case at any call of the Eighth division before the last call thereof, to wit, on February 2, 1915, when the case was, as shown, duly submitted.

It is true that the transcript with the bill of exceptions in it could have been filed here at any time after May 23, 1914, when the bill of exceptions was so signed up, and before January 30, 1915, when the transcript, as said, was actually filed, but an earlier filing could have served no useful purpose, and could not have occasioned any earlier submission of the case. The failure to file the transcript sooner having caused no delay in the submission of the cause, and the filing having been made on or before Monday of the call at which the case was submitted, and the transcript itself disclosing good cause as to why it was not filed in time to submit the case at the two previous calls, the motion to dismiss the appeal is without merit, and is consequently overruled.—*National Union v. Sherry*, 180 Ala. 627, 61 South. 944; Rule 41 of Supreme Court as published in 175 Ala. xx, 56 South. vi.

The only errors assigned are to the action of the trial court in giving the general affirmative charge for appellee, who was plaintiff below, and in refusing it to appellant, who was defendant below.

The complaint contained a count claiming of defendant the sum of $50 as the value of 1,000 pounds of seed cotton, which it was alleged, among other things, that the defendant had promised to pay to one Lucy Sampson as rent for a certain described tract of land for the year 1912, which tract of land, it was alleged, had been subsequently, and before said rent was due, conveyed to the plaintiff by said Lucy Sampson.

The evidence tended without dispute to sustain this count. It showed that the title to the land was, by an unbroken chain from the government, in Lucy Sampson before the year 1897, and remained in her until July 22, 1912, when she sold and conveyed the legal title to the same by valid deed to the plaintiff; that the said Lucy Sampson during this period of her ownership resided in a foreign state, and had an arrangement with the successive cashiers of the First National Bank of Sterling, Ill., to represent her in renting out this land in Alabama, which they successively did through successive local subagents in this state who resided near the land; that in the year 1897 one of these subagents rented the land to the defendant for 1,000 pounds of seed cotton, and put him then in possession of the premises as a tenant; that the defendant has remained in such possession continuously ever since, and has during each year, until the year 1912, paid to the successive local subagents 1,000 pounds of seed cotton, which was in each instance remitted by such subagent to the principal agent, the said cashier of the First National Bank of Sterling, Ill., who deposited it at the bank to the credit of said Lucy Sampson, as previously directed by her; that in August, 1912, the plaintiff, shortly after she had received from said Lucy Sampson the said deed to the premises, notified the defendant that the land had been conveyed to her and to pay her the 1,000 pounds of seed cotton when due in the fall for the year 1912, and that upon defendant's failure to pay the same, when so due, she brought this suit for the value thereof.

(3) The rules of law applicable to such a state of facts and fixing and defining the relationship of the parties are well settled. Rent is an incident to the re-

version, and the purchaser of the rented premises from the landlord who receives a legal conveyance at any time during the term for which the premises have been rented is entitled to the rent subsequently accruing, unless, of course, it has been previously severed from the reversion by an assignment of the rent obligation, or is otherwise reserved from the grant, which, it further appears without dispute, was not done in this case. Nor is attornment by the tenant to the purchaser of the premises necessary to the latter's right to recover the rent. Notice by the purchaser to the tenant of the conveyance to him of the premises given before the tenant pays the rent is all that is necessary to perfect the purchaser's right to the rent.—Code, § 3365; *Wise v. Falkner,* 51 Ala. 359; *Tubb v. Fort,* 58 Ala. 277; *Abrams v. Watson,* 59 Ala. 524; 18 Am. & Eng. Ency. Law (2d Ed.) 285.

The facts we have recited are not, as said, disputed by defendant. He admits that he entered into possession of the lands in 1897 as a tenant under an agreement by him to pay as rent 1,000 pounds of seed cotton, and that he has remained in possession ever since, and has regularly during the time paid said 1,000 pounds, until the said year 1912, for the rent of which year he is here sued, as said; but he seeks to qualify those facts and to modify their legal effect by testifying that in one of these years—some year after 1897 and before 1903, but which it does not appear—he, through the subagent Emmens, who locally had charge of the land from 1897 to 1903, made, with Thomas McKinney, who was the cashier of the First National Bank of Sterling, Ill., from 1902 to 1905, and the principal agent during that time for Lucy Sampson in renting out the land, arrangements to buy the land whereby he (de-

fendant) was to pay $400 as the purchase price whenever he got able, but until he did get able to and did pay the said purchase price he was to continue to pay 1,000 pounds of seed cotton a year, not, however, as rent, but only as interest on the purchase price; that said McKinney executed to him (defendant) a paper writing to that effect at the time, which had been lost and could not be produced; and that since that time—when, it does not appear—defendant has been in possession of the premises as a purchaser, and not as a tenant, and has paid the 1,000 pounds of seed cotton each year since then as interest on the purchase money of $400, which he admits he still owes, and not as rent for the premises.

(4, 5) Undoubtedly, the tenant may during the term of his tenancy enter into a contract to purchase the land, and the relation between him and his landlord will thereupon change from that of landlord and tenant to that of vendor and vendee (*Parker v. Allen,* 84 N. C. 466); but the burden of proving the change is on him who sets it up or asserts it, since a condition or relationship of landlord and tenant once shown to exist is presumed to continue so long as the tenant remains in possesion until the contrary is shown.—22 Am. & Eng. Ency. Law (2d Ed.) 1240; *Leport v. Todd,* 32 N. J. Law, 124.

Assuming as true all the defendant claims as to a contract of purchase between him and McKinney, the agent of the landlord, Lucy Sampson, it is not made to appear that the latter in any way ever authorized or ratified or even knew of the act of McKinney in this particular, or, as for that, that even any of the agents subsequent to McKinney and Emmens knew of it. Whatever may have been the arrangements subsequent to de-

[Rhodes v. Downing.]

fendant's entry into possession as a tenant between him and one of these agents, McKinney, as to purchasing the land, they could not convert defendant's holding of the possession of the premises from a holding as tenant, in which capacity he admittedly entered and paid the 1,000 pounds of seed cotton for several years, into a holding as a purchaser without the previous authority or subsequent ratification of the landlord, Lucy Sampson. It takes two to change an old contract, as well as two to make a new one.

(6) An agent to rent lands, as McKinney was, certainly had no implied authority to sell them.—1 Am. & Eng. Ency. Law (2d Ed.) 1019. There is no contention here that he had any express authority to do so. Consequently, the only possible doctrine upon which the landlord, Lucy Sampson, could be held to have been bound by the act of her agent, McKinney, in entering into a contract with defendant to sell the land, if he did so, would be upon the theory of ratification.

(7, 8) There can be no ratification, either express or implied, by the principal of the unauthorized act of an agent in the absence of knowledge on the part of the principal of such act.—1 Am. & Eng. Ency Law (2d Ed.) 1189. Here there is not a line in the evidence, either positive or circumstantial, tending to show that Lucy Sampson, or even her subsequent agents, as for that, ever in any way had any notice or knowledge of the alleged contract of purchase which defendant claims to have had with McKinney or tending to show that she, or even her subsequent agents, knew that the defendant at any time ever even claimed, if he did, in fact, do so, to be paying the 1,000 pounds of seed cotton in any different capacity from that in which he first paid it, that is, as tenant; but there is much to refute the

charge that she had such knowledge. The amount of the payment, as seen, remained the same through all the years, and was turned over to Lucy Sampson every year by the successive agents as rent, and, so far as appears, was accepted by her as rent, being placed to her credit at said First National Bank at Sterling, Ill. The amount of the payment remained the same through all the years, and presumptively the relationship between the parties remained the same—landlord and tenant— and this presumption continues until the defendant overcomes it by evidence to the contrary, which he has not done.

(9) On the other hand, if, as appellant contends, McKinney, in making the contract with appellant to sell to the latter the lands, was acting, not as agent for Lucy Sampson, but independently of her and for himself, then the result is equally disastrous to appellant. For, even assuming that the legal title to the premises was in McKinney at such time, and not in Lucy Sampson (which, however, is not the fact, according to the undisputed evidence), still, unless that title was derived from Lucy Sampson, and that after the creation of the tenancy here, the appellant, having entered possession of the premises as the tenant of Lucy Sampson, is estopped while in possession, whether the action against him be for possession or for rent, from denying her title to the premises, even though it should be that she had none, and from claiming title, either for himself or for some one else, as against her or as against any person, as the plaintiff is, who derives title from her.—18Am. & Eng. Ency. Law (2d Ed.) 418 et seq.; 5 Mayf. Dig. 601, § 7; 4 Mayf. Dig. 32, § (a) 3. Indeed, under the operation of this rule, it may happen,

[Rhodes v. Downing.]

and sometimes has happened, that a person has had to pay rent on his own land.—Ency. supra, 420; *Newall v. Wright,* 3 Mass. 138, 3 Am. Dec. 98; *Morrison v. Bassett,* 26 Minn. 235, 2 N. W. 851; *Ward v. Philadelphia* (Pa.) 6 Atl. 263. The justness of the doctrine lies in the fact that the tenant, who acquires possession of the premises by acknowledging another as landlord, should not be permitted to dispute the title of such other until he (the tenant) first surrenders possession, and thereby gives up that—the possession—which he has obtained by the acknowledgment.

(10, 11) Nor does the fact, as suggested in appellant's brief, that since the trial of the suit here the appellant has won in an ejectment suit brought against him by appellee for the possession of the premises for which rent is here claimed, change the result here, even if we could, as appellant insists we should do, take judicial knowledge, which we cannot do, of the record in the lower court of that suit, which is not a part of the record here. Even if that suit had been tried first, and the result of it, as expressed in the judgment of the lower court, had been pleaded by appellant as res adjudicata of the suit here, we question but what the plea would have been subject to demurrer, since one judgment in ejectment is not, like other judgments, conclusive.—Code, § 3858; *Boyle v. Wallace,* 81 Ala. 352, 8 South. 194.

(12) Certainly, where the ejectment suit is tried after the suit here, and the judgment therein is not pleaded, and could not, happening as it did afterwards, have been pleaded, as an estoppel to the suit here, it furnishes no reason for a reversal of the judgment in the latter suit.

It follows that the lower court did not err in giving the affirmative charge for appellee, plaintiff below, and in refusing it to appellant.

These are the only assignments of error.

Affirmed.