61 So.2d 11

### POWELL v. CITY OF BIRMINGHAM.

#### 6 Div. 299.

Supreme Court of Alabama.

June 19, 1952.

Rehearing Denied Nov. 6, 1952.

H. M. Powell, Birmingham, for appellant.

John S. Foster, Birmingham, for appellee.

BROWN, Justice.

The bill in this case was filed December 11, 1939, by W. S. Shields and H. M. Powell under the provisions of § 1109, Title 7, Code of 1940, against The City of Birmingham, a municipal corporation of Jefferson County, Alabama, to quiet the title to the West Half of Block 5 in Block 587, according to Elyton Land Company Survey of the City of Birmingham, located in the City of Birmingham, Jefferson County, Alabama. Said property is improved income producing Negro tenement houses thirteen in number and numbered 1600–2N. 9th Avenue and 905–7–9–11–15–16–17–21–23–25–27 North 16th Street in the City of Birmingham, occupied by tenants of the complainants.

After demurrer sustained to the original bill, it was amended by striking out all of paragraph two of the bill and substituting in lieu thereof the following averment: "And complainants aver that they are owners of the following described property, towit, the West Half of Lot Five, in Block 587, according to Elyton Land Survey, of the City of Birmingham, located in the City of Birmingham, Alabama, Jefferson County, Alabama." The bill was further amended by striking out paragraph three of the complaint and substituting in lieu thereof the following:

"And Complainants aver that they are in peaceable possession of said property, claiming to own the same in their own right: And that said respondent, The City of Birmingham, claims to hold a lien or encumbrance thereon; And that there is no suit pending to enforce or test the validity of such claim or encumbrance."

Following the prescription of the statute the bill alleges that the title of the complainants was disputed by the respondent, who claimed a lien thereon and called upon it to avow and assert its claim and right.

The demurrer was reinterposed to the bill as amended and was overruled.

The respondent's answer admitted the allegations of section one of the bill as last amended and denied the allegations of sections two and three of the bill as last amended, the said answer alleging:

"That from and since a date long before the filing of the original bill of complaint in this cause, the Respondent has been in the continuous, uninterrupted and peaceable possession of said property, claiming to own the same in its own right." The respondent denied that it claimed a lien or encumbrance on said property and alleged that it claims to be and that "it is the absolute owner of said property, and that the Respondent derived its title to said property in the manner set forth in the next succeeding section of this Respondent's Answer."

The answer admitted that there was no suit pending other than the bill in this case to enforce or test the validity of the respondent's title to the property. The answer alleges that the respondent acquired title to the property by virtue of the following proceedings and acts:

"On the 19th day of April, 1921, the Commission of the City of Birmingham duly levied upon and against the West Half of said Lot 5 an assessment and lien, numbered D–4468, City Series, for a proportion of the cost of street improvements constructed under Improvement Ordinance 45–D; that said assessment and lien became delinquent prior to the 26th day of June, 1925; that on the 26th day of June, 1925, after due advertisement, the West Half of said Lot 5 was duly and regularly sold and conveyed to Respondent for the satisfaction of said assessment and lien; and the Respondent has ever since owned the title so acquired by said sale and conveyance. A copy of said public improvement sale deed is attached hereto, marked Exhibit A, and made a part thereof.

Respondent avers that said public improvement sale deed was duly filed for record in the office of the Probate Judge of Jefferson County, Alabama, on the 13th day of July, 1925, and is of record therein at page 74 of Volume 1454, Record of Deeds."

The respondent made its answer a cross bill and prays that upon final hearing a decree be rendered that this respondent and cross complainant is the owner of and entitled to retain the possession of the aforesaid Lot 5 and that the complainants and cross defendants have "no right, title or interest in said Lot 5." The Respondent offers to do equity and prays for general relief.

The complainant filed an answer to the cross bill denying that the respondent has ever had actual, continuous, uninterrupted and peaceable possession of said property but they say "that on the contrary complainants have always claimed to own the same, occupied same by tenants, have assessed it for taxation and paid the taxes thereon for more than ten years from the time that the alleged claim of the respondent arose and from the date of the alleged sale to the respondent. That from the date of said alleged sale down through and including May 1936, said respondent recognized the right of complainants to the possession of said property by its tenants and that on to wit March 29, 1927, it assessed against the complainants and caused them to pay a large sum of money viz. approximately $1,000 to have certain sanitary connections put into said property as the property of these complainants. A copy of the notice to the complainants and served upon them March 29, 1927, together with a letter from the Department of Public Health, and under which order the complainants were forced to pay to the City of Birmingham for the installation connections of said sanitary sewers is hereto attached and marked exhibits 'A' and 'B'."

The answer to the cross bill alleges further that said "respondent is estopped and precluded from setting up or attempting to set up any claim against said complainants as they have had open, notorious, and exclusive possession of said property hostile to the world and to the knowledge and notice of this respondent for more than eleven years after the time that this respondent claims to have acquired any interest in said property. That had said respondent attempted to sue for the possession of said property in ejectment the statute of limitations of ten years would have barred them; knowing which they have attempted to illegally and with a strong hand wrest the possession of said property from your complainants."

The answer to the cross bill further alleges in paragraph B on page 18: "That on March 10, 1936, this respondent acting through its Police Officers coerced the tenants of these complainants who were in the possession of said property under and by virtue of lease contracts with complainants to pay to said respondent and its agents the rents upon said premises, and have continued to collect said rents and are now collecting the same. A copy of the notice served upon said tenants being hereto attached and made a part of this answer marked Exhibit 'C'. Together with notice to rental and collection agents of Complainants and Cross Respondents also hereto attached and made a part of this answer marked Exhibit 'D'. And complainants charge that the amount of said income so collected by the respondent and its agents after the deduction of the usual cost of the collection thereof and of any necessary repair to said property is more than sufficient to pay the amount of the alleged assessment both principle and interest claimed to be due to the respondent for such alleged improvements."

On December 11, 1950, the cause was submitted for final decree upon the stipulation of the parties and pleadings and testimony noted as follows: "This cause was submitted in behalf of Complainant upon Bill of Complaint, as last amended and testimony of —— stipulation of parties with exhibits thereto and complainants interrogatories and Respondent's answers thereto and in behalf of Respondent upon the respondent's answer as last amended; the complainant's interrogatories and the Respondent's answers thereto and the stipulation and all Exhibits thereto."

The court on the 24th day of January, 1951, entered a final decree, denying the complainant relief and dismissing his bill, and granting relief to the respondent on its cross bill, quieting the title to the property in the City of Birmingham.

From this decree the complainant has appealed.

The record shows that pending the suit W. S. Shields, the husband of Mrs. Ada M. Shields, original owner of the property, died, Mrs. Shields having predeceased him, dying intestate leaving her husband who had a curtesy interest and an only son, the appellant here, as the owners of said property.

The parties entered into the following stipulation of fact.

"It is stipulated by and between the complainant, H. M. Powell, and the respondent, City of Birmingham, in the above styled cause as follows:

"1. The parties to this cause in stipulating to the facts herein contained agree that it is their intention that the Court will not consider any fact which is not material to the issues in this case.

"2. The property involved in this litigation is the West Half of Lot 5 in Block 587, according to Elyton Land Company's survey of City of Birmingham, which property will hereinafter be referred to as 'the lot'. The lot, situated in the City of Birmingham, fronts 50 feet on 9th Avenue North and runs back on 16th Street North 240 feet to an alley. It is improved by several Negro houses, said houses being numbered: 1600–1602 North 9th Avenue and 905–7–9–11–13–15–17–19–21–23–25 and 27th North, 16th Street, Birmingham. All of said houses are in bad condition.

"3. Ada M. Shields during her lifetime owned the lot. She died intestate in the year 1917. She left surviving her husband W. S. Shields, and H. M. Powell, her son by a former marriage. She left no other child or children surviving; and both her father and mother pre-deceased her.

"W. S. Shields was appointed Administrator of Ada M. Shields' estate and acted as such until 1935. There were no claims filed against the estate, and the estate was settled in 1935.

"W. S. Shields took possession of the lot under his *courtesy*, and he assessed the lot for taxation and paid taxes thereon from 1917 down to and including the year 1936.

"During the year 1945, while this suit was pending, W. S. Shields died. Following the death of the said Shields, this suit was revived in the name of The First National Bank of Birmingham as Administrator of the Estate of W. S. Shields. The First National Bank as Administrator of the Estate of W. S. Shields transferred to the Complainant the rights, title and interest of said W. S. Shields in and to the rents that may have been collected by the respondent on the lot by a written instrument of transfer, which was sufficient to transfer to the said complainant the right the said Administrator had in and to the rents collected by the said respondent, if the said Administrator had any rights therein. Subsequent to said transfer last referred to herein, the said Administrator was stricken as a party complainant.

"4. On the 19th day of April, 1921, the Commission of the City of Birmingham duly and legally levied upon and against the lot an assessment and lien, numbered D–4468, City Series for a proportion of the cost of street improvements constructed upon Improvement Ordinance 45–D. Said assessment and lien became delinquent prior to the 26th day of June, 1925. On the 26th day of June, 1925, after due, proper and legal advertisement, while the said assessment and lien was still delinquent, the lot was duly and regularly sold and conveyed to the respondent for the satisfaction of said assessment and lien. A copy of the public im-

provement sale deed, by which the lot was conveyed to the respondent as aforesaid, is attached hereto, marked Exhibit 'A' and made a part hereof by reference. Said deed was duly filed for record in the Office of the Probate Judge of Jefferson County, Alabama, on the 13th day of July, 1925 and is recorded therein at page 74 of Volume 1454, Record of Deeds. The assessment and lien were duly, regularly and legally levied. The advertisement, last referred to above, was duly, regularly and legally made. The sale, last referred to above, was duly, regularly and legally made and conducted. The deed last referred to above was duly, regularly and legally executed and delivered.

"5. The lien or assessment pursuant to which the sale, referred to in Section 4 above was made final on April 19, 1921, for $1,352.50; and the amount due on the 27th day of June, 1926, the date of said sale, on said lien or assessment, including interest thereon, was $1,798.57. At said sale, the City bid for said lot the sum of $1,798.57, which was the whole amount of the assessment, interest and cost then due and remaining unpaid on said lot.

"6. From the death of Ada M. Shields in the year 1917 down to and including the date on which the City began to collect rents from said property, the said W. S. Shields was in continuous, uninterrupted, open and notorious, adverse possession of said lot; and the said W. S. Shields subsequent to the death of the said Ada M. Shields assessed the said lot for taxation down to and including the assessment for the tax year 1936. And that he paid all taxes on said property to the tax year 1936.

"Relying upon the deed referred to in Section 4, above, the City after giving the form of notice set forth in Complainants' interrogatory 21, on the 9th day of April, 1936, began to collect rent from the tenants who had theretofore entered upon said lot under leases with the said Shields, and the City has continued to collect rents therefrom down to the date of this stipulation, to the extent hereinafter set forth.

"The gross amount of rents collected from or on said lot by the respondent City or by its agent acting for it and on its behalf, from the date on which the said City first intercepted rentals on said lot to the 1st day of January, 1942, amounted to $4,233.15; the costs of collections and repairs amounted to $1,432.30 to that date. The amount of rentals collected on said lot by the City from January 1, 1942, to the 1st day of November, 1950, is $6689.35. The reasonable cost of collecting last named amount of said rentals was $668.93.

"7. On or about August 2, 1927, the respondent City notified W. S. Shields that as owner of the lot he would be forced to put in certain toilet facilities on this property to comply with City Ordinances of the City of Birmingham, a copy of said notice being hereto attached, referred to and made a part of this statement marked Exhibit 'B'. The said City notified the said Shields that upon his failure to make said installation, the respondent City had caused the same to be done and had levied a lien against said lot for said installation in the amount of $673.00, which amount the said W. S. Shields paid to the respondent, City of Birmingham, to satisfy the said last named lien.

"8. In the year 1944, the respondent City through its agents tore down and removed two of the houses on said lot, of the value of $1,500.00.

"9. On May 12, 1936, W. S. Shields filed a petition with the City Commission of the City of Birmingham claiming, among other things, that he was in possession of the lot under his *courtesy* rights as the husband of Ada M. Shields, and claiming that he had been in possession since the demise of the said Ada M. Shields in 1917; and in said petition the said Shields denied the right of the City to obtain posses-

sion of the property by sending the notice referred to in Section 6, above, to the said Shields' tenants; and in said petition the said Shields requested that the respondent City proceed in a legal and orderly manner to obtain possession of the property, and 'to let a jury determine the rights of both of the parties.' After hearing this petition, the Commission of the City of Birmingham denied the same."

It appears on the record that the complainant Shields was not only the administrator of his wife's estate but also the guardian of the minor heir, who held a vested fee in remainder. This was in fact stated in the notice of March 29, 1927, "to have water closets and sinks installed and connected to sanitary sewers", in the buildings on said lot. Said minor heir is the same person as the appellant here, H. M. Powell. Said notice recognized the complainant as owner in possession of the property through the real estate agent in charge. Thereafter an assessment was levied against said property for the cost of installing said water closets and sinks, which the complainant was required to pay and which the respondent received and accepted for its own use in the sum of $657.15. The assessment was made final April 4, 1928.

The interrogatories and answers to the same propounded by the complainant to the respondent go to show that prior to the written stipulation there was some controversy between the parties as to the regularity or validity of the assessment ordinance adopted in 1921 for failure to list as owner Shields, as administrator and guardian, as required by law, which induced Shields to give notice to the respondent and to request it to proceed in the courts to determine the controversy rather than by intermeddling with and subordinating complainant's rental agents, handling the rental and collecting of the rents from the property then in the possession of the complainant's tenants. After this notice was given the respondent ignored the same and nothing was done about it.

The appellant's first contention is that he is entitled to have the rents collected by his real estate agent and turned over to the city, respondent, in satisfaction of the assessment accrued with interest and to redeem the property in question from the alleged sale. In support of this contention appellant cites and relies on § 679, Title 62, Code of 1940. Said section originated in Act No. 289 approved April 12, 1911, Acts 1911, pp. 373–376, which on its face applied only to persons and corporations engaged in operating public utilities such as railroads, street railways, manufacturing plants and municipalities. Its purpose was to authorize such persons, corporations and municipalities to enter into a joint adventure to build elevated railroads, viaducts under railroads and street railways and to provide for the amortization of the costs of such improvements by an agreed rental for the use of same by the public and the interested parties. Said act was considered and treated in City of Birmingham v. Louisville & N. R. Co., 216 Ala. 178, 112 So. 742, and was subsequently revised in the Act of June 30, 1943. Neither in its original form nor as revised was said act applicable to the case as presented on the record before us.

The appellant further contends that the respondent is precluded from asserting title to the property in question under the facts of this case by the statute of limitations of ten years.—Code of 1940, Title 7, §§ 18, 19 and 20. Prior to the adoption of the Code of 1907 the statutes of limitation were held to be applicable to actions for the recovery of lands by the state and its subdivisions, such as counties and municipalities.—State v. Inman, 239 Ala. 348, 195 So. 448. These limitations were abrogated by §§ 4830, 4831, Code of 1907. Said § 4831 provided that, "There is no limitation of the time within which counties and other municipal corporations may bring actions for the recovery of lands belonging to them." This section was brought down through the Code of 1923 as § 8940 and into the Code of 1940 as § 17, Title 7.

The statutes providing for the redemption of property sold to satisfy liens created by public improvement ordinances are found in the Code of 1940 as Title 37, §§ 562 through 568. Such right must be ex-

ercised at the longest within six years from the date of sale. Hill v. Di Beneditto, 253 Ala. 229, 43 So.2d 819.

However, the bill in this case does not seek redemption, but is a statutory bill to quiet title in the complainant. It cannot be doubted that the respondent in dealing with the property in question was dealing in its corporate capacity with respect to its proprietary rights therein and not in its strict governmental capacity. Brown v. Tuskegee Light & Power Co., 232 Ala. 361, 168 So. 159; City of Birmingham v. Whitworth, 218 Ala. 603, 119 So. 841; City of Montgomery v. Quinn, 246 Ala. 154, 19 So.2d 529.

It is without dispute in the evidence that the respondent city delayed for more than eleven years to assert its alleged title and claim to the property in question and in the meantime the complainant regularly assessed the property for state, county and municipal taxes and paid the same. Such taxes were distributed to the different agencies of government, including the taxes due to the respondent city, which it accepted without question.

It also appears that the respondent on August 2, 1927, after its alleged purchase of the property, levied an assessment against the property in question as the property of complainant for water, toilet facilities and sanitary connections, which assessment was paid by complainant and accepted by the respondent, with knowledge of all the facts.

■ Respondent made no effort to assert its claim until the year 1936 and then not by due process of law but by intermeddling with complainant's agents handling said property by inducing such agents for a consideration, towit, ten percent of the amount collected, to pay the same to the respondent. At no time was complainant's possession through the tenants terminated. Davis v. Williams, 130 Ala. 530, 30 So. 488, 54 L.R.A. 749, 89 Am.St. Rep. 55; Kelly v. Kelly, 250 Ala. 664, 35 So.2d 686; Rhodes v. Downing, 13 Ala. App. 494, 68 So. 788. By such intermeddling by the defendant with complainant's agent it received the sum of $6,689.15, more

than three times the amount of said assessment and in addition thereto the sum included in the assessment for sanitary installations and connections.

■ It is well settled that although there is no limitation of time within which a municipal corporation must sue for the recovery of lands claimed to be owned by it, the same result as a bar of the statute of limitations may be effected by the application of equitable estoppel in pais to be applied through courts of equity where the facts and circumstances, in the judgment of the court, warrants its application. 31 C.J.S., Estoppel, § 138, page 403; Brown v. Tuskegee Light & Power Co., 232 Ala. 361, 168 So. 159; State ex rel. Martin v. City of Gadsden, 216 Ala. 243, 113 So. 6; State ex rel. Roberson v. Town of Pell City, 157 Ala. 380, 47 So. 246; Dillon on Municipal Corporations, (4th Ed.) 675; Iowa v. Carr, 8 Cir., 191 F. 257, 266. In the last cited case it was observed:

■ "The great weight of authority, the stronger reasons and the settled rule upon this subject in the courts of the United States, is that * * * when a sovereignty submits itself to the jurisdiction of a court of equity and prays its aid, its claims and rights are judicable by every other principle and rule of equity applicable to the claims and rights of private parties under similar circumstances." See also Utah Power & Light Co. v. United States, 8 Cir., 230 F. 328.

In State ex rel. Radcliff v. City of Mobile, 229 Ala. 93, 96, 155 So. 872, 875, it was observed: "It may also be stated as a sound principle of municipal law, abundantly supported by the authorities, that a municipal corporation may purchase *and hold property* for only such purposes as are authorized by its charter or an applicable statute." [Italics supplied.]

■ It seems to be settled that, "A municipal corporation may not acquire property for purposes of investment or speculation, nor may it become a dealer in real estate. Thus it may not erect a building for the mere purpose of renting it out, or take a lease of property merely for the

purpose of deriving revenue therefrom by subletting or otherwise, or purchase and run a manufacturing establishment." 63 C.J.S., Municipal Corporations, § 959, pages 508, 509.

We have not overlooked the provisions of Title 37, § 561, Code of 1940, authorizing the city to purchase at foreclosure sale under the ordinance, but it seems to be against public policy as established by the weight of authority for a municipality to hold rental property as an investment.

We have not overlooked City of Birmingham v. Lee, 254 Ala. 237, 247, 48 So. 2d 47, 55, which holds that, "Persons dealing with agencies of government are presumed to know the legal limitations upon their power and cannot plead estoppel on the theory that they have been misled as to the extent of that power. City of Mobile v. Mobile Electric Co., 203 Ala. 574, 84 So. 816. No person can claim to have altered his position for the worse by acts or promises which the law warns him he must not depend upon. Whitfield v. Hatch, 235 Ala. 38, 177 So. 149."

■ Nor, that unauthorized assessments for public improvements or taxes will not estop the municipality from setting up a claim of title to the land on which the assessments were made. But where in addition to the levy and collection of taxes, there appear other circumstances rendering it clearly inequitable for the government or one of its subdivisions to claim title, the doctrine of estoppel may be applied. 31 C.J.S., Estoppel, § 147, page 434. Such is the situation presented by the instant record.

■ Our conclusion, therefore, is that the peaceable possession of complainant was not terminated by the action of the City of Birmingham as above noted and that the complainant continued in possession through its tenants until the filing of the original bill in this case and that the said intermeddling by the respondent did not affect the peaceable possession of complainant; that under the facts in this case the City of Birmingham is estopped by its inequitable conduct to assert and claim title to the property in controversy and that

the appellant, who was sole complainant after the death of his stepfather, is entitled to the relief prayed for in his bill and a decree will be here rendered quieting the title to said property in the appellant Powell.

Reversed and rendered.

LIVINGSTON, C. J., and FOSTER and SIMPSON, JJ., concur.