# Lewis *v.* The State.

## *Murder.*

(Decided June 29, 1912.   59 South. 577.)

1. *Jury; Venire; Service on Defendant.*—Where there was a substantial compliance with the statute and the court's order requiring the venire to be served on defendant, and where the copy of the venire served on him on the day of his arraignment, contained the names of three regular jurors who had not been summoned, and a second venire was served on him six days later and two days before the day set for the trial, which omitted such name, and substituted those of three others, who had been summoned as regular jurors for the week, the defendant was not prejudiced thereby, especially as the certificate of the clerk appended to the second venire explained the error.

2. *Same; Order for Summoning.*—The order of the court entered on arraignment that the sheriff "summon the persons whose names are now drawn from the jury box in this court on the day so set, as jurors for the trial of this cause" is a substantial compliance with the statutory requirement that he be required to summon them, to appear in court, on the day set for trial.

3. *Homicide; Evidence; Dying Declarations.*—To be admissible as a dying declaration a statement made by a decedent need not have been made at the point of deed; nor need he have said, in so many words, that he was in extremis, that death was impending, or that he had no hope of recovery; it is enough that the court be satisfied, on a close and cautious scrutiny of the facts, that decedent was impressed with the conviction that he could not recover.

4. *Same.*—Declarations of deceased that defendant was out there hunting and had his gun, and deceased said that he had a writ for him, having relation to the res gestæ of the inception of the difficulty, was admissible as a part of the dying declaration.

5. *Same; Corroboration.*—It was competent for the sheriff to testify that he had delivered a capias for defendant to one of his deputies, on whose request decedent was attempting to arrest defendant, on the question of deceased having such a capias, and as tending to corroborate the dying declaration of deceased that he had such a capias.

6. *Same; Evidence.*—It was competent to show that a book taken from deceased's pocket shortly after he was wounded, had shot holes in it, as tending to prove the means by which deceased was wounded.

7. *Same; Resisting Arrest; Escape.*—The right to resist or escape arrest is not waived by a submission to an unlawful arrest, especially where such arrest has been coerced.

8. *Same.*—One who has submitted to an unlawful arrest may resist efforts to disarm him.

9. *Same; Justification.*—While one may resist illegal restraint of his liberty, such as unlawful arrest, or an effort to disarm him after such an arrest, resistance must not be in enormous disproportion to the wrong and injury threatened; such person has no right to kill to prevent a mere trespass, unaccompanied by imminent danger of great bodily harm or felony, not producing in his mind the reasonable belief of such danger.

10. *Same.*—Charges stating correct propositions of law involving the right of resistance to unlawful arrest and applicable to a phase of the evidence, cannot be held not prejudicial, in the absence of something in the record showing the contrary.

11. *Same.*—Where a defendant, who submitted to arrest by decedent, and then obtained permission to go to his house with the purpose of securing the advantage of being in his home, and there, without lawful excuse or sufficient provocation, treacherously slew decedent, he can be convicted of murder in the first degree, without regard to whether deceased had lawful authority to arrest him.

12. *Same.*—Where decedent went on defendant's premises at defendant's request and for defendant's convenience, he was not a trespasser, and a charge asserting that under these circumstances decedent was a trespasser was properly refused.

13. *Same; Self-Defense; Evidence.*—Charges hypothesizing that deceased forcibly carried or took defendant to his home were properly refused as hypothesizing a fact of which there was no evidence.

14. *Same; Issues.*—The issue being whether there was excuse or extenuation for defendant killing deceased, and not under what circumstances deceased might have lawfully killed defendant, a charge asserting that deceased could not, under certain circumstances there named, have lawfully killed defendant, was properly refused as dealing with matters not before the court.

15. *Arrest; Authority; Special Officers.*—If the person who requested deceased to arrest defendant was not a general deputy or under sheriff with authority to execute all the duties of the office of sheriff, but was merely specially deputized for the particular purpose of arresting defendant, while he might call on a bystander for help in a personal effort to execute the writ or command the

aid of the posse comitatus, he could not delegate his delegated authority, so as, in his absence, to give deceased authority to make the arrest.

16. *Same; Possession of Writ.*—The mere possession of a writ confers no authority to arrest; the possessor, not being an officer, must have received authority to execute it from some officer authorized to appoint a special deputy.

17. *Same; Disarming Prisoners.*—An officer who has lawfully exercised an authority to execute an arrest may lawfully disarm his prisoner.

18. *Trial; Reception of Evidence; Motion to Exclude.*—Where a part of the evidence is relevant and competent, the duty is not on the court to separate the good from the bad, and a motion to exclude the whole evidence may be denied.

19. *Charge of Court; Absence of Evidence.*—The court is not required to give charges asserting that there is no evidence of a certain matter.

APPEAL from Wilcox Circuit Court.

Heard before Hon. B. M. MILLER.

Johnson Lewis was convicted of murder in the first degree, and appeals. Reversed and remanded.

The facts sufficiently appear from the opinion of the court. The following charges were refused the defendant:

(14) "The court charges the jury that if the jury believe from the evidence that the deceased was not appointed a deputy by the sheriff, S. D. Moore, and if they further believe that the only authority that deceased had for the arrest of defendant was a request of Springle that deceased should arrest and bring in the defendant, Springle not being with deceased at any time, then the court charges the jury that the deceased had no authority in law to arrest the defendant."

(15) "The court charges the jury that a special deputy sheriff cannot, without being present, delegate his authority to another. He might call on some one to assist him, but cannot appoint another to act in his stead."

[Lewis v. The State.]

(16) "The court charges the jury that, under the evidence in this case, they cannot find the defendant guilty of either murder in the first or second degree."

(10) "I charge you, gentlemen of the jury, that, under the evidence in this case, Trammel, the person alleged to have been killed, was a trespasser upon the premises of Johnson Lewis; and, if the jury believe from the evidence that the defendant was rightfully in his dwelling house on said premises, then I charge you that the defendant was in his castle, and had a right to defend the same against unlawful and forcible intrusion."

(12) "If the jury believe from the evidence that Trammel had no warrant for the arrest of the defendant, and if they further believe from the evidence that deceased forcibly took defendant to defendant's house and put his hand on his pistol, then, the defendant being at the time in his dwelling house, the jury must acquit the defendant."

(13) "The court charges the jury that if the jury believe from the evidence that deceased had no warrant for the arrest of defendant, and the deceased forcibly carried defendant to his house and put his pistol in defendant's face, that then the jury must acquit the defendant."

(6) "The court charges the jury that, even though the deceased had a legal warrant or capias for the arrest of defendant, if the jury believe from the evidence that the warrant charged the defendant with the commission of a misdemeanor, it would have been murder in deceased, had he killed defendant in an attempt to escape."

(1) "The court charges the jury that there is no evidence in this case that deceased had either a warrant or capias when he attempted to arrest the defendant."

[Lewis v. The State.]

E. N. & W. C. JONES, for appellant. The order of the court was not sufficient.—Acts 1909, p. 319; *Washington v. State,* 81 Ala. 35. Defendant's motion to quash the venire should have been granted.—Acts 1909, p. 319. The dying declarations were not admissible.— *Johnson v. State,* 99 Ala. 180; 117 Ala. 20. The court erred in admitting the books in evidence, and also erred in permitting the sheriff to show that he had a capias for defendant, and had turned it over to a deputy. Charge 1 should have been given—*Adams v. State,* in MSS. Charge 6 should have been given.—*Brown v. State,* 109 Ala. 70; *Adams v. State, supra.* Charges 17, 10, 12, 13, 14, 15 and 16 should have been given.— *Brown v. State, supra;* Sec. 6267, Code 1907, and cases there cited.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The service of the second copy on defendant two days before the trial corrected any errors or irregularities in the order and service of the venire.—*Coates v. State,* 1 Ala. App. 35; *Savage v. State,* 57 South. 469. A motion to quash was properly denied.—Sec. 29, Acts 1909, p. 319. Counsel discuss charges given and refused, but without citation of authority. The court properly admitted the book as tending to show how the wounds were inflicted. —*Barnett v. State,* 165 Ala. 59; *Newell v. State,* 115 Ala. 54; *Burton v. State,* 107 Ala. 108; *Holley v. State,* 75 Ala. 410. The court properly admitted evidence of the dying declarations.—*Heninburg v. State,* 153 Ala. 313; *Pate v. State,* 150 Ala. 10; *Blackburn v. State,* 98 Ala. 63; *Pulliam v. State,* 88 Ala. 1. Where a question is answered before objection is interposed, the objection comes too late.—*Stowers F. Co. v. Brake,* 158 Ala. 639; *Downey v. State,* 115 Ala. 108; *McCalman v. State,* 96

[Lewis v. The State.]

Ala. 98. Questions not answered do not show error.
—*Hughes v. State,* 75 Ala. 31; *Snodgrass v. Caldwell,*
90 Ala. 319; *Harris v. Basden,* 162 Ala. 367.

SAYRE, J.—Appellant was duly arraigned on No-
vember 3, 1911, and his case set for trial on the 8th.
Three efforts were made to execute the court's order
that a copy of the indictment and the venire be served
forthwith upon the defendant, the first on the day of
the arraignment, the last upon the 6th. The second re-
quires no special attention. The first and second copies
of the venire served upon the defendant contained the
names of three regular jurors who had not been sum-
moned. In all other respects they were regular and,
so far as their contents were concerned, complied with.
the court's order. The sheriff's return as to these three
jurors was that they had not been found. The copy of
the venire last served upon the defendant, identical in
other respects with the first, omitted the names of the
three regular jurors who had not been summoned, and
substituted for them the names of three others who had
been summoned to serve as regular jurors for the week
in which the case was set for trial. Appended to this
last venire or list of jurors was a certificate by the clerk
to the effect that the last list was made and served on
the defendant for the purpose of correcting the errors
mentioned, and setting them out with particularity.
The clerk's certificate removed all occasion for misap-
prehension of the meaning of the several lists served
upon the defendant; and, in view of the circumstances
which have been stated, we hold there was a substan-
tial compliance with the statute and the court's order,
which required that a list of the names of all jurors,
regular and special, be forthwith served upon the de-
fendant by the sheriff. See *Coates v. State,* 1 Ala. App.

35, 56 South. 6; *Savage v. State,* 174 Ala. 94, 57 South. 469.

We are not able to see the force of the suggestion of error in the record which takes the point that the order of the court upon arraignment fails to show that the sheriff was required to summon the special jurors, who were yet to be summoned, in the language of the statute, "to appear in court" on the day set for the trial. The order was that "the sheriff summon the persons, whose names are now drawn from the jury box in this court on the day so set, as jurors for the trial of this cause." The provision of the statute and the requirement of the order were identical in meaning and effect; and the mere trifling departure of the order from the verbiage of the statute cannot be allowed to have the effect contended for.

Deceased received the wound of which he died early in the morning of Friday, November 4, 1910. The flesh and muscle of his left forearm—the entire lower portion of the arm to the bone, the surgeon testified at one point—were torn away by a charge of small shot from a shotgun. He suffered a severe primary arterial hemorrhage, and was greatly prostrated from shock and loss of blood before he received surgical aid. The surgeon from the beginning, so he testified, recognized the serious nature of the wound, though he did not communicate his fears to his patient. Death followed from the wound on Wednesday evening next thereafter. The state depended entirely upon the declaration of the deceased for an account of the circumstances of the difficulty in which he received his wound. In the interval, deceased, according to the state's witness Weatherly, repeatedly stated his belief that he would never get up, that he would never get well, and finally that he would die. He made no response to the efforts of his kins-

men and friends to encourage him, and at no time, so far as appears, did he express a hope of recovery. In the evening of the day before his death, deceased made a statement to the witness Weatherly of the circumstances under which defendant had shot him, and this statement, repeated by the witness, was received as a dying declaration over defendant's objection. In this we do not find error. It was not necessary, say our cases, that the declaration should have been made in articulo mortis; nor that the deceased should have said, in so many words, that he was in extremis, that death, impended, or that he had no hope of recovery. It is necessary, however, that the court should be clearly satisfied, upon a close and cautious scrutiny of the facts upon which admissibility depends, that the declarant was impressed with the conviction that he could not recover. After an examination of many of our cases on the subject, we have reached the conclusion that the evidence of the declaration made to Weatherly was properly received.—1 Mayf. Dig. p. 287, §§ 26-72. So, likewise, on the testimony of the witness Dunn, the declaration made to him by deceased, about an hour after deceased had been wounded, and before the surgeon had reached him, was received in evidence without error.

The state proved that shortly after deceased was wounded a small book was taken from a pocket in the coat he wore, and that it had shot holes in it. We read the record to mean that the witness to this fact also volunteered a statement that the book contained the constitution of the Farmers' Alliance, and that the deceased was a member of that organization. Defendant's motion to exclude this evidence—all of it, as we understand—without any discrimination between its parts, was overruled. In view of the unquestioned

facts of the case, this piece of evidence was altogether useless; but, so far as it related to the presence of the book and its physical condition, it had a tendency to prove the means by which deceased's wound was inflicted. That was a relevant fact competently proved; and it is impossible to say it was erroneously kept before the jury by the court's ruling made on defendant's motion to exclude. The idea is advanced that the statement that deceased was a member of the Farmers' Alliance, and that the book contained a copy of the constitution of that order, were calculated to arouse an unjust prejudice against the defendant. If there was apprehension of that effect, and it had been expressed in the form of a motion to exclude that part of the testimony which went to prove the irrelevant and objectionable facts, we do not doubt that the trial court would have excluded those parts, and would have taken other appropriate measures to guard the jury box against the intrusion of unworthy influences, whether set in motion by testimony or argument. And we must presume that the trial court either did so in a general way in its oral charge, or, no separate motion being made, considered the matters now urged for error as mere trifles, which had no effect upon the minds of the jury. At any rate, under the rule which has heretofore prevailed in this court, a part of this evidence being relevant and competent, it was not the duty of the court, on a motion directed against all of it, to separate the good from the bad. That should have been done by the defendant or his counsel.

The state's theory of how and why the killing occurred was disclosed by evidence which tended to show the following facts: Defendant had been indicted for a misdemeanor. A deputy sheriff at Pine Hill had requested deceased, who lived in the same neighborhood

with defendant, "to bring him in." Deceased armed
himself, and next morning, as he went along the road,
met defendant, who was hunting and had his gun. De-
ceased told defendant he had a writ for him. For the
rest, we reproduce the declaration of deceased as testi-
fied to by the witness Weatherly: "He [defendant]
said, 'All right.' He demanded his gun; but he refused
to give up his gun. He told him then to take out the
shells. He unbreeched his gun, and shook the shells
out. He said he wanted to go by his house; but he did
not tell him what for. He followed him to the house,
and followed him in. When he started in the house,
he told him he had better not go in the house. He
would go in, and he followed him inside the house.
When he got inside the house, he passed by his wife,
and lunged his wife against him. Before he recovered
he shot him and ran out of the door." Defendant's ver-
sion was this: "I met him in the road. He told me
he wanted to see me, and to stop. Mr. Trammell came
to me. He said, 'Consider yourself under arrest.' I
asked Mr. Trammell if he had a warrant for me, and
he told me, 'No.' I told him 'You can't arrest me if
you ain't got no warrant.' Finally he prevailed on me
that would be all right. I told him, 'Well, I will go
and give up and go with you,' and walked on back to
the house and went in the house. He said, 'Take the
shells out of the gun.' I unbreeched and took the shells
out, but never would give the gun up, or the shells. In
going in the house, I pushed the shells back in the gun.
After I got in the house, he said: 'Well, you got to
give up the gun,' and took his pistol and threw it in
my face, and when he done that I shot Mr. Trammell."
On cross-examination, defendant testified that he asked
deceased to let him go to his house, which was near at
hand, and get some clothes; that on the way deceased

had tried to get him to surrender his gun; that he reloaded his gun as he went up the steps in advance of deceased; and that, after they got in the house, deceased said: "Give up the gun. If you do not give it up, I will shoot you"—and put the pistol in his face.

The declarations of deceased, as reproduced by the witness Weatherly, to wit, "Johnson [meaning the defendant] was out there hunting, and had his gun," and "he [deceased] said he had a writ for him," related to the res gestæ of the inception of the difficulty, and were properly admitted in evidence. As said by Stone, C. J., in *Johnson v. State,* 102 Ala. 1, 16 South. 99, "in every conceivable case in which it becomes material to ascertain the manner of bringing on a difficulty—the position, occupation, conduct, and manner of the respective parties at the time the quarrel had its inception—are pertinent circumstances to be weighed in determining who was the aggressor. They shed light on what was done, and are incidents of the main fact. That is the true test."

Whether deceased had a warrant or capias for the defendant, and whether, under the deputy sheriff's appointment, he had authority of law for his arrest of the defendant, were material questions in the case. The argument for appellant proceeds at several points upon the idea that the evidence showed, without conflict, that deceased had no warrant. As we read the record, deceased, in his dying declaration, testified that he had a writ for defendant. This, as we have said, was competent evidence of the fact. There was, then, no error in that ruling of the court which permitted the state to show that the sheriff of the county had delivered the capias for defendant to Springle, the deputy on whose request the deceased was attempting to arrest the defendant. Springle, though his name was marked on

[Lewis v. The State.]

the indictment as a witness for the state, did not testify, thus leaving an hiatus in the testimony, apart from the dying declaration, by which it was sought to trace the capias into the possession of deceased. Nevertheless, the evidence was competent, and tended to corroborate and establish the statement of the dying declaration on that point, and there was no error in receiving it.

We have referred to Springle as a deputy sheriff. One of the witnesses so referred to him. The sheriff of the county testified that he had not authorized the deceased to execute the writ for the apprehension of defendant. There was nothing to the contrary. Whatever authority deceased had in the premises was conferred upon him by Springle. But whether Springle was a general deputy or undersheriff, who, by virtue of his appointment as such, had authority to execute all the ordinary duties of the office of sheriff, or whether he was specially deputized for the particular purpose of arresting the defendant, does not appear. It was shown that Springle was not present at the time deceased attempted to arrest defendant. If Springle's authority was special, though he might have called upon a bystander for help in the personal effort to execute the writ, or might have commanded the aid of the posse comitatus (*Watson v. State,* 83 Ala. 60, 3 South. 441; *Dougherty v. State,* 106 Ala. 63, 17 South. 393), he had no authority to delegate the authority which had been delegated to him, and in that case deceased had no authority to make the arrest.—*Perkins v. Reed,* 14 Ala. 536; *Hunt v. Burrel,* 5 Johns. (N. Y.) 137; *Allen v. Smith,* 12 N. J. Law, 159.

An officer, who has lawfully executed an arrest, may disarm his prisoner.—*Ex parte Hurn,* 92 Ala. 102, 9 South. 515, 13 L. R. A. 120, 25 Am. St. Rep. 23. Submission to an unlawful arrest is not a waiver of the

right to resist or to escape; a fortiori this is true where such arrest has been coerced.—*Roberson v. State,* 53 Ark. 516, 14 S. W. 902; *Alford v. State,* 8 Tex. App. 545; 2 Am. & Eng. Encyc. p. 852. It follows that one who has submitted to an unlawful arrest may resist an effort to disarm him. But, while the right of any citizen to resist any attempt to put any such illegal restraints upon his liberty cannot be denied, resistance in such cases must not be in enormous disproportion to the wrong and injury threatened. He has no right to kill to prevent a mere trespass, which is unaccompanied by imminent danger of great bodily harm or felony, and which does not produce in his mind the reasonable belief of such danger.—*Noles v. State,* 26 Ala. 31, 62 Am. Dec. 711; *Adams v. State,* 175 Ala. 8, 57 South. 591.

It is scarcely necessary to say that the mere possession of a writ conferred no authority upon deceased. He must have received authority to execute the writ from some officer having authority to appoint a special deputy.

Charges 14 and 15, requested by the defendant, stated correct propositions of law, and their refusal was error which must cause a reversal. Under that phase of the evidence presented by his testimony, these charges stated propositions of law which were of least importance to the defendant. They stated principles which not only affected the rights of the defendant under that view of the case presented by his testimony, but may also affect the rights and liberties of all citizens in similar cases. They involved the right of resistance to unlawful arrest—a phase of the right of self-defense which, to a just and reasonable extent, is essential to every form of government. We are unable, therefore, to say that the propositions of these charges were un-

important, or that for any reason appearing of record, their refusal was without detriment to the defense.

Charge 16 was, however, properly refused. It was open to the jury, under tendencies of the evidence, to find that defendant submitted to arrest and requested that he be permitted to go to his house with the purpose of securing what advantage there might accrue to him by reason of the fact that he was in his own house, and there, without lawful excuse or sufficient provocation, treacherously slew the deceased. If the jury so found, then they did well to convict defendant of murder in the first degree, without regard to whether deceased was authorized by law to arrest defendant.

Charge 10 erroneously asserted that deceased was a trespasser upon the premises of defendant; whereas the evidence went to show that deceased had gone there upon defendant's request and for defendant's convenience. Charges 12 and 13 were properly refused also. They hypothesized a fact of which there was no evidence, to wit, that deceased forcibly carried or took defendant to the latter's house.

Charge 6 was well refused. It dealt with a case not before the court. The question was, not under what circumstances the deceased might have lawfully killed defendant, but whether there was excuse or extenuation for the act of defendant in killing deceased.

Charge 1, refused to the defendant, stated no proposition of law. It has been frequently held that courts cannot be required to declare to juries that there is no evidence of this, that, or the other fact.—*Troup v. State*, 160 Ala. 125, 49 South. 332.

For the errors indicated, the judgment of conviction will be reversed and the cause remanded.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., not sitting.