183 So. 879

## WELCH v. STATE.
### 7 Div. 283.

Court of Appeals of Alabama.

May 10, 1938.

Rehearing Denied June 30, 1938.

Beddow, Ray & Jones, of Birmingham, for appellant.

276

A. A. Carmichael, Atty. Gen., and Chas. L. Rowe, Asst. Atty. Gen., for the State.

SAMFORD, Judge.

The defendant, together with 11 others, was indicted by the grand jury of Talladega county on a charge of murder in the first degree. When the cause was called for trial the defendant moved for a severance, which motion was granted, and this defendant, alone, was placed on trial.

At the time of trial, and in accordance with the statute, the defendant made his motion for a change of venue in accordance with section 5579 of the Code of 1923, setting forth specifically the reasons why he could not have a fair and impartial trial in Talladega county, the county in which the indictment is found. The motion was in legal form and meets all of the requirements of the statute.

Issue was joined on this motion, and after hearing the evidence, both for the movant and the State, the motion was denied. This act of the court is made the basis of an insistence that the judgment in this case should be reversed and the cause remanded.

Bearing in mind the statute which provides that: "The refusal of such application may, after final judgment, be reviewed and revised on appeal, and the supreme court or court of appeals shall reverse and remand or render such judgment on said application, as it may deem right, without any presumption in favor of the judgment or ruling of the lower court on said application," we have proceeded to a consideration of the question from the evidence as it is presented by the bill of exceptions.

 The crime, if committed at all, having been committed in Talladega county, the venue is legally there, and the presumption is that the defendant would have, at the hands of duly constituted authorities, a fair and impartial trial according to the forms of law. The burden is upon defendant to prove that this is not true, and this must be shown to the reasonable satisfaction of the court. Notwithstanding the statute which makes it the duty of this court to review and revise on appeal, the action of the trial court in refusing to grant an application for a change of venue—"with-

out any presumption in favor of the judgment or ruling of the lower court on said application," the rule which fixes the burden upon the defendant to show to the reasonable satisfaction of the court that an impartial and unbiased verdict cannot be reasonably expected is not changed. In Crowder v. State, 18 Ala.App. 632, 93 So. 338, it was said (page 339): "Under the provisions of an act entitled an act 'to amend section 7851 of the Code of Alabama,' approved August 26, 1909, it is made the duty of this court to review and revise, on appeal, the action of a trial court in refusing to grant an application for a change of venue 'without any presumption in favor of the judgment or ruling of the lower court on said application.' Acts Special Session 1909, p. 212. In thus reviewing the matter, however, the rule is not changed that the burden is upon the defendant to show to the reasonable satisfaction of the court that an impartial trial and an unbiased verdict cannot be reasonably expected." Baker v. State, 209 Ala. 142, 95 So. 467; Malloy v. State, 209 Ala. 219, 96 So. 57.

The evidence on the question is very voluminous, including many affidavits from citizens of Talladega county in every walk of life. And, without going into details relative to this evidence, this court is clear to the conclusion that the defendant has not met the burden of proof, and from the evidence adduced it appears that defendant could obtain such fair and impartial trial as the law guarantees within the county of the venue, and that the trial judge committed no error in denying the motion.

■ The defendant then filed a plea in abatement, setting forth the fact that there was then pending a prior prosecution of this defendant for the same acts and upon the same charge, as that charged in this indictment, upon an indictment returned into court by the grand jury prior to the time the indictment in this case was returned and filed. On motion of the solicitor this plea was stricken. Such a plea in abatement is not an answer to the indictment in this case. If, as matter of fact, there were two cases of the same kind and character, the trial and determination of the one might be pleaded in bar of a prosecution in the other, but the pendency of the one could not abate the prosecution of the other. Treadaway v. State, 18 Ala.

App. 409, 92 So. 529; Whitaker v. State, 21 Ala.App. 114, 105 So. 433.

■ At the beginning of the trial the defendant filed his motion to quash the venire, on the ground that the jury box from which the venire was drawn had been prepared in a manner contrary to law and that the filling of said box was tainted with fraud; in that, the jury commission intentionally and purposely failed at the time said jury box was filled, and when the jury roll from which said box was filled was made up, to include in said jury roll the name of each and every person in said county whom they had found to possess the qualifications requisite for jurors in said county; that there are more than 3,000 persons qualified to perform jury service in Talladega county; that the jury commission placed only about 1200 names in the said jury box, selecting said 1200 names from among persons whom they knew, or had reason to know, or had a well grounded belief, were interested in procuring the conviction, or were desirous of procuring the conviction of this defendant in this trial; that said jury box was filled by said jury commission subsequent to the finding of this indictment and approximately 30 days prior to the time the venire summoned for this trial was drawn from said jury box; that the jury commission in filling said jury box fraudulently included a large and disproportionate number of names in said box of men who were actively and financially interested in financial institutions having an affinity of interest with the Samoset Cotton Mills, with deep-seated prejudice against union labor, and fraudulently refused to include in said box the names of persons who were qualified as jurors, but who were known to possess sympathy for, and understanding of, the problems of the working man; that said jury commission fraudulently included among said names a large and disproportionate number of names of persons who were employed by or officially connected with the offices of local county officers, or were closely affiliated with county officers whom they knew to be opposed to the principles of union labor, and whom they knew to be angered and resentful over the death of the chief deputy sheriff, and whom they knew to be unsympathetic with the principles of union labor, and included in said list a large and disproportionate number of names of those who were employed by

banking institutions and by cotton mill corporations in an executive or supervisory capacity, and fraudulently failed or refused to include in said 1200 names a fair proportion of names of those who were employed as laborers or in subordinate positions in said cotton mills or other institutions where the workmen were known or supposed to be sympathetic with the principles of union labor.

Demurrer to the motion to quash was overruled, and issue thus formed on the motion to quash was joined.

After hearing the evidence on the motion, the court overruled the same, and that action of the court is here insisted upon as error.

On the trial of the issue raised by the motion to quash, it was recognized that section 8637 of the Code of 1923 governs, and that no objection could be taken to the venire, except for fraud in drawing or summoning the jury.

It may be admitted that the action of the jury commission in filling the jury box with only 1056 names, whereas there were more than 3000 citizens of Talladega county qualified as jurors under the law, was such an irregularity as would entitle a party in interest to a writ of mandamus to compel the jury commission to fill the box in accordance with the statute (Bell v. Terry, 213 Ala. 160, 104 So. 336), but, in the absence of proven fraud on the part of the jury commission, the venire in this case could not be collaterally attacked. Such is the holding in Garner v. State, 206 Ala. 56, 89 So. 69; Bell v. Terry, supra; Reeves v. State, 17 Ala.App. 684, 88 So. 197; Morris v. State, 18 Ala.App. 135, 90 So. 57.

Much evidence was introduced on the issue raised by the motion to quash, all of which has been carefully read and considered by this court. We do not find that the evidence sustains the charge of fraud, and for that reason we hold that the trial judge was not in error in overruling the motion.

■ After the overruling of the motion to quash, the defendant moved for a continuance of the case, which motion was, by the court, overruled. It has been so often held that, the granting of continuances by trial courts is peculiarly within the discretion of the trial judge, and that this discretion will not be reviewed, except in cases where it clearly appears that there has been an abuse of his power, it is unnecessary for us to say more, than that from this record we cannot say that the trial judge abused his discretion in requiring the defendant to go to trial.

■ In presenting argument that the trial court had abused its discretion in refusing to grant a continuance to this defendant, appellant's counsel uses this language: "In this connection and as a matter of history, the appellant draws attention of the Court of Appeals to the fact that when the court overruled the motion to quash the venire, the defendant in this case, along with those who were jointly indicted with him, filed in the Circuit Court of Talladega County a petition for a writ of mandamus to compel the jury commission to fill the jury box according to law, hearing upon which petition for writ of mandamus was postponed until a date subsequent to the time when this defendant was required to strike a jury from the venire drawn." This fact does not appear in this record, but we are asked to consider it as a matter of judicial knowledge. This does not appear to be one of those facts which the court can consider as a matter of history. 23 C.J. 115 (1922) b; Rhodes v. Downing, 13 Ala.App. 494, 68 So. 788.

■ The evidence for the State tended to prove that on, or about, June 16, 1936, this defendant, who was not a citizen of Talladega county, came to Talladega for the purpose of, and began to organize a union among the textile workers of the Samoset Cotton Mills, a mill located and being operated in Talladega. In this effort he met with opposition from the owners and operators of the mill, and those interested in keeping the mill open and running. Certain demands were made on the operators of the mill relative to wages and hours of labor by a group of workers under the leadership of this defendant. These demands were refused. This difference between the group of laborers, under the leadership of defendant, and the operators of the mill, resulted in a "shut down." Some of the witnesses refer to the closing of the mill as a "strike," and others as a "shut down." Whichever it was, either "strike" or "shut down," the mill closed operation and all of the operators were out of employment.

Up to this point everything was lawful; the workers had a right to organize their union, and through their agents or officers

to make demands for wages and hours of labor as to them seemed right. The principle of collective bargaining and of co-operative unions is now well established in the industrial life of this country. The mill owners had a perfect right to either accept or reject such terms, and, upon rejection, to shut down the mill. The right of property is still existent under the Constitution and, in no sense, has been abrogated by the changing conditions in the industrial life of the nation.

The right of labor to unionize, either in crafts or as a whole, and to make demands and bargains with employers, is everywhere recognized. But, these rights do not give to such organizations the right to seize and hold private property, or to interfere with its free and uninterrupted enjoyment.

The evidence for the State further tends to prove that, when the owners of the mill shut it down, this defendant, acting as leader of the union, organized the operatives into what is called a "picket line," surrounding the plant to prevent the operation of the mill by others, who were willing to work upon the terms named by the mill owners, and to prevent free ingress and egress to and from the mill by those who had such right.

This "picket line" was composed of both men and women, armed first with clubs, and then with long sticks, and, as the feeling became more tense, with guns and pistols, all of which was with the purpose and design to prevent the free use of the mill property by the owner or its agents. Beginning with the organization of the "picket line" by this defendant, the feeling between the pickets and those interested in the operation of the mill became more and more tense, and this defendant, as the leader of the pickets, was constantly among them giving instructions and encouragement in an open and flagrant violation of sections 3447 and 3448 of the Code of 1923, which provide:

Section 3447.—"Two or more persons who, without a just cause or legal excuse for so doing, enter into any combination, conspiracy, agreement, arrangement, or understanding for the purpose of hindering, delaying, or preventing any other persons, firms, corporation, or association of persons from carrying on any lawful business, shall be guilty of a misdemeanor."

Section 3448.—"Any person or persons, who, without a just cause or legal excuse therefor, go near to or loiter about the premises or place of business of any other person, firm, corporation, or association of people, engaged in a lawful business, for the purpose, or·with intent of influencing, or inducing other persons not to trade with, buy from, sell to, have. business dealings with, or be employed by such persons, firm, corporation, ·or association, or who picket the works or place of business of such other persons, firms, corporations, or associations of persons, for the purpose of hindering, delaying, or interfering with or injuring any lawful business or enterprise of another, shall be guilty of a misdemeanor; but nothing herein shall prevent any person from soliciting trade or business for a competitive business."

There were some denials as to a part of the above, but where there were such denials the questions were for the jury, and there was sufficient evidence justifying the jury in believing the facts as above stated.

On the night of July 22d, while this defendant was actively engaged in and about the leadership of maintaining the "picket line," Johnnie Bryant, who was the chief deputy sheriff of Talladega county, together with two other deputies, went to the "picket line" at about 9:30 p. m., and attempted to arrest this defendant without a warrant, as a result of which there was a fusillade of shots, both by the "picket line" and the officers, during which Bryant and another were killed and many others wounded.

There was much evidence introduced leading up to the actual homicide, during which there were many objections and exceptions. It would unduly extend this opinion to undertake to set out the whole testimony or to pass separately upon each of the exceptions. It will suffice to say, all of the evidence related to and tended to explain the acts and circumstances surrounding the homicide. The res gestae of the crime is not confined to the moment of the killing, but includes acts, statements, occurrences, and circumstances forming a part or a continuation of the main transaction, beginning with the defendant's arrival in Talladega, and continuing through the days of the organization of the union and "Picket Line" up to and including the actual homicide. 16 C.J. 572 (1114) note 36.

The rulings of the court on the various questions presented on the introduction of testimony were free from error of a reversible nature.

 Insistence is here made that Johnnie Bryant, the chief deputy sheriff who was killed, was attempting to make an unlawful arrest of defendant for an offense not then being committed in his presence. Even if this were so, the defendant knew that Bryant was an officer of the law, he knew he was attempting to make an arrest, and while it cannot be denied that any citizen has a right to resist any attempt to put illegal restraint upon his liberty, resistance in such cases must not be in enormous disproportion to the wrong and injury threatened. He had no right to kill in order to prevent a mere trespass, which is unaccompanied by imminent danger of great bodily harm to his life or limb, and which does not produce in his mind the reasonable belief of such danger. Berry v. State, 27 Ala.App. 507, 175 So. 407; Lewis v. State, 178 Ala. 26, 59 So. 577; Adams v. State, 175 Ala. 8, 57 So. 591.

 Refused charge A–34 was properly refused, in that it referred a question of law to the determination of the jury. 6 Alabama Digest, Criminal Law, ☞766.

 Refused charge 16 seeks affirmative instruction that Johnnie Bryant committed a trespass upon the person of defendant, whereas there was evidence from which the jury might have concluded otherwise. This was an invasion of the province of the jury, and the charge was properly refused.

 Refused charge A–24 was invasive of the province of the jury. Under one phase of the testimony, this defendant was engaged in an unlawful act in the presence of an officer at the time of the attempted arrest. If so, Bryant, the officer, not only had a right, but it was his duty to arrest, with or without a warrant. A person cannot organize an unlawful assembly of men and women, have them armed with clubs, sticks, guns, and pistols, obstruct vi et armis the operation of private property day and night from June 16th to July 22d, thereby preventing the owner from its free and uninterrupted enjoyment, and, when approached to be arrested by the duly constituted authorities of law, claim that he has a right to kill such officer or have him killed by his orders. Such were the tendencies of the evidence as offered by the State.

 Refused charge A–28 ignores that phase of the evidence which charges defendant with responsibility for those who were under his command at the time of the killing.

 Refused charge A–29 was fully covered by the court in its oral charge to the jury.

 Refused charge YY ignores the duty resting on the defendant to submit to an unlawful arrest rather than to kill the officer undertaking to make it. Berry v. State, 27 Ala.App. 507, 175 So. 407.

Principles involved in refused charge AA –2 have already been discussed, and the charge held to be bad.

 Refused charge A–25 was misleading. There was evidence tending to prove that, as chief deputy sheriff, Johnnie Bryant had a right and it was his duty to arrest the defendant, with or without a formal warrant. This charge gives undue prominence to the contention that Bryant must have had a formal warrant and attempting to execute same at the time of the homicide. Where there are two or more theories, giving undue prominence to one to the exclusion of the other can only have the effect of confusing the jury. Liner v. State, 124 Ala. 1, 27 So. 438.

 We have carefully considered this entire record, and, in line with the foregoing opinion, we hold that the trial judge did not commit error in overruling the motion for a new trial. Especially is this so in view of the fact that a motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court. Aaron v. State, 181 Ala. 1, 61 So. 812.

 The newly discovered evidence relative to the finding of the pistol near the scene of the homicide, and fixing the ownership in Johnnie Bryant, was only cumulative and impeaching. Where the newly discovered evidence tends only to discredit the State's witnesses, the action of the trial court in overruling a motion for a new trial on that ground is not error, unless upon the whole case it appears probable that the new evidence would change the result. Cosby v. State, 202 Ala. 419, 80 So. 803; Collins v. State, 217 Ala. 212, 115 So. 223.

Newly discovered evidence authorizing a new trial must be, not merely impeaching or cumulative, but sufficient to probably change the result of the trial. Scruggs v. State, 224 Ala. 328, 140 So. 405.

Viewing the entire record, and giving due consideration to the arguments made by appellant in the very able brief filed in this case, we are moved to say that this court holds to a recognition both of property rights and human rights under the Constitution. It also holds to the doctrine that, when the two conflict, property rights must yield to the rights of the person. But, human rights do not include the forcible taking of private property, except for the protection of the general public, and not then, without just compensation.

The judgment is affirmed.

Affirmed.

### On Rehearing.

SAMFORD, Judge.

On rehearing the appellant complains that the statement of facts and conclusions by this court are incorrect in that, it is there stated: "Johnnie Bryant, who was the Chief Deputy Sheriff of Talladega County, together with two other deputies, went to the picket line about 9:30 P. M." The contention made is that the evidence does not warrant the finding that the two men who accompanied Johnnie Bryant were deputies. The evidence for the State discloses that Harvey Hayes testified: "At that time I was Special Deputy Sheriff at Bemiston. * * * Sure did have a Deputy Sheriff's Commission." And, he further testified that Joe Hayes was asked by Johnnie Bryant to go with them and to aid in the arrest of Welch, the defendant. Whether these persons held commission as deputy sheriffs or not is immaterial. They were deputized by the chief deputy of Talladega county in aiding him in making an arrest of the defendant. And, under section 3265 of the Code of 1923, it was the duty of Harvey Hayes and Joe Hayes to assist the deputy in making the arrest.

The other conclusions of facts stated in the original opinion are fully borne out by the evidence, and the contentions made by the appellant in his brief are but arguments upon the weight of the testimony.

Application overruled.