A jury found defendant guilty of rape. The court fixed his punishment at imprisonment for life and sentenced him accordingly. *Page 1116 
Appellant says that the trial court should have granted defendant's motion for a new trial on grounds alleging in effect that the verdict was contrary to the great weight of the evidence.
The undisputed evidence shows that the alleged victim, a married woman, was raped at her home. This undisputed fact is not questioned by appellant. His attack upon the sufficiency of the evidence is aimed exclusively at the question of the identity of the rapist. Defendant testified that he was not the guilty person. The victim, the only other eyewitness to the crime, was unable to identify defendant as the criminal. The only person at the home of the victim at the time was her seven-month-old child. According to the victim, the man who raped her ran from her home, and about that time she ran screaming from the house pleading for help.
Richard James testified that on the occasion of the crime he was sitting in a truck across the street from the victim's residence. He shouted at the man he saw running from the victim's residence, whom he identified as the defendant, but lost sight of him as he went behind a neighboring house. He and a neighbor, Don Ward, who was a witness also identified the man as the defendant, then pursued him in Mr. Ward's automobile to some pecan trees, where the man left the road running; Mr. James called law enforcement authorities, and Mr. Ward remained until authorities arrived. There was other corroborative evidence, including testimony that bloodhounds were brought to the area where defendant had been seen running, that they took up the scent for a while, but that defendant obtained a taxi, and he was taken to an address that he said was the home of his uncle and aunt, but which was an apartment of Jerome Grimsley, at which defendant was living at the time.
With the exception of the testimony of the defendant, the evidence, including circumstantial evidence and some expert testimony, was extraordinarily strong against him. We see no necessity for stating further details in support of our conclusion that the verdict was amply supported by the evidence and that it was not palpably wrong or unjust.
We do not agree with appellant's contention that the trial court was in error in overruling defendant's motion to suppress evidence of the contents of the apartment where defendant was living with the permission of the tenant thereof on the day of the crime. The tenant, as stated above, was Jerome Grimsley, a cousin of defendant. No search warrant was obtained, but Jerome Grimsley freely and voluntarily gave his consent. Thereby there is an exception to the necessity for the procurement of a search warrant, and the fruits of the search were admissible against defendant to the same extent that they would have been admissible against Grimsley. Frazier v. Cupp, 394 U.S. 731,740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Cobb v. State, Ala.Cr.App., 355 So.2d 741, (1978); United States v. Woods,560 F.2d 660 (5 Cir. 1977).
Another issue presented by appellant is stated by him as follows:
 "Did the trial court err in denying bail to the Defendant before trial?"
Defendant filed a motion for bail on August 16, 1979. On August 24, the motion was denied. He argues that the case is not a capital case and for that reason he was entitled to bail. In Exparte Bynum, 294 Ala. 78, 312 So.2d 52, 55 (1975), it was held:
 ". . . The only effect of Furman,[1] was to eliminate the imposition of the death penalty as it was then enforced, and not to eliminate the classification whereby crimes are categorized as capital for purposes other than punishment."
Perhaps strictly speaking it can be said that since the effective date of Code of Alabama 1975 the crime of rape is not "categorized" as a capital offense, in view of the deletion from the Code of the punishment of "death" from that previously prescribed and its omission from the crimes now punishable by death proscribed by the Death *Page 1117 
Penalty and Life Imprisonment Without Parole Act as codified in §§ 13-11-1 through 13-11-9. Nevertheless, we hardly see a reasonable basis for not applying the rationale of Bynum,supra, merely because the legislative department of the State has acted, as the judicial department has done, to meet the demands of Furman. Whether the rationale of Bynum still applies or not, there is other law (Code of Ala. 1975, § 15-13-3 (a)) that stands as an answer to appellant's contention.
 "A defendant cannot be admitted to bail when he is charged with an offense which may be punished by death if the court is of the opinion, on the evidence adduced, that he is guilty of the offense in the degree punished capitally, nor when he is charged with a personal injury to another which is likely to produce death and which was committed under circumstances such as would, if death arises from such injury, constitute an offense which may be punished by death. (emphasis supplied)"
Section 15-13-3 (a) was obtained intact from Code 1940, recompiled 1958, Tit. 15, § 195, effective at the time of the rendition of Bynum, supra.
By Code of Alabama § 13-11-2 (a)(3), rape when the victim is intentionally killed by the defendant constitutes a death penalty and life imprisonment without parole crime.
There was evidence, strong evidence, of the brutal nature of the crime, including the use by the rapist of a large knife, with which he cut the victim on her hand. He choked her with both hands and threw her to the floor. The evidence is not sufficient to convince us that the victim sustained "a personal injury . . . likely to produce death," but it cannot be said with certainty as of the time bail was denied, that the trial court was not convinced that her injury was not "likely" to produce death," nor that defendant did not intend to kill the victim. It appears that on the hearing of the motion for bail, the parties submitted to the trial court the transcript of the evidence on the preliminary hearing, which chiefly pertained to the question whether there was probable cause for believing that defendant committed the crime of rape and not whether he was entitled to bail.
It is to be said also that if the trial court was in error in denying defendant's motion for bail, then was the time for defendant to have attempted to review the action of the trial court. He evidently elected not to do so. We cannot assume, as he now claims, that if he had been allowed bail he would have provided bail and would then have been in a better position to defend himself by counsel than he was while confined in jail until the time of trial. There was no substantial injury to defendant, insofar as the verdict of the jury is concerned, that resulted from his failure to be granted the right to make bail.
Appellant states that the trial court was in error in not granting defendant a continuance of the case, which he requested by a written motion. The court conducted a hearing on the motion, at which no evidence was offered, but counsel for the parties presented at length their respective views. The gist of appellant's view at the present time is stated in his brief as follows:
 "The Defendant did not have the same attorneys for the preliminary hearing that he did for trial. Defendant's trial counsel did not have adequate time, with the Defendant confined in jail with no bail, to adequately prepare the case for trial. The trial Court was advised that the defense would be alibi and that counsel needed his client to go over the ground where he had been on the date of the alleged crime and that he could not adequately get the facts without the assistance of Defendant. . . . The trial Judge obviously abused his discretion when he denied defendant even one short continuance to adequately prepare his defense — particularly in view of the extra security placed around Defendant."
We are favorably impressed with the argument made by defendant's counsel on the motion for a continuance as to the desirability and advisability perhaps of having more time to prepare the defense, as applied to *Page 1118 
the facts that the indictment was returned on August 3, defendant was arraigned on August 13, and the case was set for trial on August 27, 1979. However, we are not favorably impressed with the contention that the "trial Judge obviously abused his discretion" in the context stated above. The colloquy among the court and respective counsel for the parties on the motion for a continuance constitutes over nineteen pages of the transcript. The most specific statement by defendant's counsel as to a need for further time to establish defendant's claim of an alibi was with reference to the unknown whereabouts of Wallace Jerome Grimsley, a cousin of defendant mentioned hereinabove on another subject, with whom defendant was living at the time. Defendant's attorney said:
 ". . . Wallace Jerome Grimsley has consented [sic] himself or concealed himself or left the State. We don't know. We are trying to locate him through his family and tried to ascertain his whereabouts and have a talk with him. There is another point. As I said, the race question was purely for the sake of letting the emotions subside."
Thereupon, the court made a statement which is as follows:
 ". . . I wasn't aware that race is an issue and if it is, I think the Defendant has made it an issue."
Counsel for the State then said:
 "Judge, I might say in response to Mr. Grave's supposed showing that what Grimsley told the Defendant's Mama, I would like to state that he made a statement to the police that he had no idea where the Defendant was during that period of time. He specifically stated that he was not in his apartment at that time. And the Defendant made a statement saying that he was not anywhere around Grimsley at that time."
After further colloquy, defendant's counsel told the court that Grimsley's family had "been reluctant to cooperate" and that he should be ready in a "maximum of six months." The remainder of the hearing on the motion for a continuance is shown by the transcript as follows:
 "THE COURT: No, sir. We no way we wait six months to try anything around here.
 "MR. GRAVES: I don't know how long you try cases, but would it be in the next thirty days or the next sixty days before the end of the year would be fine. If you will just give us a little more time to work on this thing to establish the ___ the District Attorney said in one breath, said it is so serious that he should not be allowed bail and then the next breath said that there is nothing to it. He could get out and establish his Defense right here in jail. Seems to be a little bit inconsistent. If it is that serious to be denied bail, perhaps we should have a continuance to properly present the defense.
 "THE COURT: All right. Motion for Continuance denied."
Perhaps it is significant to note that in defendant's motion for a new trial containing twenty-three alleged grounds there was one ground alleging that the court erred in failing to grant a continuance to allow defendant "to properly prepare his Defense," but that there was no ground pertaining to any newly discovered evidence. The motion for new trial was filed on September 27, thirty days after the verdict and judgment. It is reasonable to assume that during that thirty-day period no evidence had come to the attention of defendant or his attorney of a material or substantial nature that would have enabled defendant to have presented a stronger defense than he did. Otherwise, it seems that he would have called it to the court's attention in his motion for a new trial.
It appears that defendant's trial counsel had become his counsel by employment soon after defendant's preliminary hearing, that prior to and during such hearing he was also represented by retained or employed counsel in the city of Dothan. After defendant appealed from his conviction, the trial court appointed his trial counsel, the defendant's indigency having been established to the satisfaction of the trial court, said counsel having his office in Eufaula. *Page 1119 
We cannot say, as appellant urges, that the trial judge "obviously abused his discretion" in denying defendant's motion for a continuance. Appellant fails to convince us that the trial court in its consideration of all of the circumstances abused the discretion vested in it in ruling on defendant's motion for a continuance. In the absence of an abuse of such discretion, its ruling does not constitute reversible error.Brown v. State, Ala.Cr.App., 377 So.2d 1139, cert. denied,377 So.2d 1142 (1979); Williamson v. State, Ala.Cr.App.,370 So.2d 1054, aff'd 370 So.2d 1066 (1978); Rogers v. State, Ala.Cr.App., 365 So.2d 322, cert. denied, 365 So.2d 334 (1978).
Appellant tends to base prejudicial error upon the court's denial of defendant's motion for a change of venue. He begins his argument by saying, "The victim of the rape was a white woman, wealthy and prominent family, and the Defendant was a black man." He has not shown in the trial court or here that that fact would have been any barrier to his obtaining a "fair and impartial trial" in Houston County, which is a requisite to the change of venue. Code of Alabama, 1975, § 15-2-20 (a). He relies upon, and we follow, Gilliland v. State, 291 Ala. 89,91-92, 277 So.2d 901 (1973),
 "Our statute provides that this Court's review of the trial court ruling is to be de novo, without any presumption in favor of that ruling. Title 15, § 267, supra. However, the burden was on the defendant to show to the trial court that a fair trial could not be expected. Welch v. State, 28 Ala. App. 273, 183 So. 879 (1938). Let us proceed to examine the matter as if in the shoes of the trial judge.
 "The policy of our change of venue statute balances the inconvenience and administrative inefficiency of a change with the knowledge that certain crimes so arouse the public in a particular locality that a fair trial there is impossible. A study of the cases reveals that these crimes are invariably of a notorious or spectacular nature, involving violence to the person; specifically, murder and rape. . . ."
On the hearing of the motion for a change of venue, defendant's counsel made a two-page statement in which he stated that "there was a story that was circulating . . . it did have currency in Dothan, Houston County to the effect that . . . persons who are otherwise unknown to us, had offered ten thousand dollars for the death of Benjamin McLoyd." During his discussion of this "story," the following occurred:
 "MR. GRAVES: We would think with Sheriff Clark and the jailer and all that we can establish that it was true.
 "THE COURT: It is strictly up to you, whatever evidence you want to put on. That is what I am here for.
 "MR. GRAVES: All right. But, that is the evidence we propose to put on if you would like at this time.
 "THE COURT: It is up to you. I am here to hear whatever you have to offer."
Defendant then called Sheriff Clark as a witness. Sheriff Clark testified:
 "Q. Have you heard or do you know of any story that was circulated subsequent to that rape that there was a reward or a contract out on Benjamin McLoyd of ten thousand dollars being offered for his death?
"A. Just routine stuff.
"Q. Did you hear it?
"A. Yes, routine.
 "Q. And you and your department took extra security measures to insure the safety of Benjamin McLoyd?
 "A. That is our job to insure that nothing happens. But, we have had this a number of times. We just don't let anything happen.
 "Q. I commend you for it. But, you did hear it and you did take extra precautions?
"A. I did hear it.
 "Q. No effort was made at this time and he remains in your custody from the day of his arrest until the present time?
"A. Yes, sir."
On cross-examination, Sheriff Clark testified: *Page 1120 
 "Q. You haven't heard it out in the community anywhere?
"A. No, sir.
"Q. That is the only place you got it?
 "A. Only place. [He had said that one of the people working in his department had heard two or three people talking about it while at coffee.]
 "Q. No one has made any attempts on him that you know of?
"A. Not that I know.
"Q. You haven't heard any talk around the community?
"A. No, sir. I haven't.
 "Q. You get around the community pretty much don't you, Sheriff Clark?
"A. See a lot of people.
". . . .
 "Q. And all of that is going around the County and everything, the only time you have ever heard anything on this was one occasion?
"A. One time.
 "Q. And somebody in your department told you about it and as usual, you made extra security precautions? Not because your thought it was real or ___
"A. We didn't want anything to happen. Routine.
 "Q. In your opinion, can he get a fair trial here in Houston County?
"A. In my opinion, he could.
"Q. Okay."
After Sheriff Clark testified, defendant's attorney stated:
 "Your Honor, the Sheriff was pretty much it. We had a jailer and so forth, but Your Honor has gotten that and there is no need, it will probably be cumulative. It is going to be pretty much the same thing, that they took ___ Your Honor sees that, so I don't know that we need them."
Thereafter, defendant called as a witness defendant's mother, who testified that she had heard stories that a contract for ten thousand dollars had been placed on defendant's life.
Appellant's attorney also argues, as he did in the trial court, that the "newspapers, T.V., and radio in the area had given prominent play to the details of the rape and the arrest of the Defendant." There was no claim, and certainly no evidence, that such publicities were slanted in any way against defendant. Appellant argues that "Defendant's cousin had been involved in an alleged rape and been acquitted and later convicted for a subsequent rape." In addition, he reminds us that McLoyd v. State, Ala.Cr.App., 373 So.2d 1175 (1979) was an appeal from a conviction of rape in Houston County. Whether the McLoyd in that case was a kinsman of appellant, we are not informed, and the writer does not know. There is no statement of fact in the record proper or in the transcript, by testimony or otherwise, that prospective jurors in the county had been generally impressed by anything they had heard relative to the case. The transcript does not show that any of the panel of jurors from whom the jury that tried the case was selected had any knowledge or information relative to the case.
The record, including the transcript of proceedings, shows the possibility of the inability of defendant to obtain a fair trial in Houston County. It does nothing more. There is no showing of error prejudicial to defendant in the denial of his motion for a change of venue. McLaren v. State, Ala.Cr.App.,353 So.2d 24, cert. denied, 353 So.2d 35 (1977); Burnett v.State, Ala.Cr.App., 350 So.2d 718 (1977).
Appellant's final insistence on reversible error is as to the action of the court is allowing a witness to testify as to incriminating statements made by defendant to him, which were taped and which the witness said had been transcribed by typing and that thereafter the taped material had been erased from the tape, in accordance with normal practice. The transcribed statement was not offered in evidence. The witness was a person who took the statement by tape and said he was thoroughly familiar with all the questions and answers therein, although it appears that he used the transcribed statement in refreshing his recollection. This was permissible. *Page 1121 
 "The law recognizes the right of a witness to consult a memorandum to aid in his recollection in two instances. The first is when the witness is able to look at a memorandum and, from it, have his memory so refreshed that he can testify, as a matter of independent recollection, to facts pertinent to the issue. . . ." Gamble, McElroy's Alabama Evidence
§ 116.01 (1977)
Appellant's reliance upon Pinkston v. State, Ala.Cr.App.,365 So.2d 364 is misplaced, for in Pinkston, the particular question involved was as to the introduction of a memorandum itself without a proper predicate.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
HARRIS, P.J., and TYSON, DeCARLO and BOWEN, JJ., concur.
BOOKOUT, J., concurs in result.
[1] Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 26, 33 L.Ed.2d 346
(1972).